**Eva Marie BENTON as Parent and Natural Guardian of Jason K. Wildt, Minor and Jason K. Wildt, Minor, Appellant (Plaintiff below),**

v.

**CITY OF OAKLAND CITY, Indiana, Appellee (Defendant below).**

No. 26S04–9803–CV–156.

Supreme Court of Indiana.

Dec. 29, 1999.

Richard C. Rusk, Washington, Indiana, Attorney for Appellant.

Jeffrey W. Henning, James D. Johnson, Evansville, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

Attempting to rescue his drowning nephew, plaintiff Jason Wildt broke his neck when he dove into shallow water at defendant Oakland City's beach. He appeals lower court determinations that the city owed him no duty to warn of the danger. Finding that those courts incorrectly applied the admittedly confusing precedents governing this area of the law, we hold that the city owed the plaintiff such a duty.

### Background

A summary of the facts most favorable to the judgment follows. On June 12, 1994, fourteen-year-old Jason and his mother visited a lakeside beach and swimming facility owned and operated by Defendant Oakland City. This was their first visit. Jason and his mother paid the admission fee the City charges all of its patrons. Sometime during the day, Jason walked to the adjacent parking lot to retrieve refreshments out of his mother's car. Soon thereafter, Jason heard people shouting his nephew's name. All swimmers had been called out of the lake for a brief period of time and then given a signal to return to the water. A stampede ensued and Jason's nephew had either been pushed or had fallen into the water and did not resurface. In response, Jason ran down the embankment from the parking lot, took two running "steps in the water" and dove to search for his nephew. (R. at 29.) No one else was in that area of the lake for Jason to observe the depth of the water and he assumed the water's depth would be equal to that of another area in which he had swum earlier that day. However, because the water was shallow, Jason's head immediately struck the bottom of the lake. Jason suffered a broken neck.

After serving the City with a Notice of Tort Claim, Jason and his mother, Eva Benton, filed a complaint against the City on May 9, 1996, asserting that the City was negligent in its operation of the beach. The City denied all allegations and raised affirmative defenses of immunity under the Indiana Tort Claims Act and contribu-

tory fault.[1] Shortly thereafter, the City filed a motion for summary judgment, contending that the City did not owe a "private duty" to Jason. The trial court agreed.[2]

On appeal, Jason asserted that the City owed him a duty to warn of the danger of diving in a particular area of the lake. The City contended that insofar as it had such a duty, it was a general duty owed to the public and not to Jason individually. The Court of Appeals affirmed the trial court's finding of summary judgment in favor of the City, holding that the City owed no duty to Jason. *Benton v. City of Oakland City*, 684 N.E.2d 251 (Ind.Ct.App. 1997).

In reaching its decision, the Court of Appeals applied a test that we employed in *Mullin v. Municipal City of South Bend*, to determine whether a city owed a duty to a victim of a house fire to dispatch an ambulance. 639 N.E.2d 278, 284 (Ind. 1994) (adopting the reasoning of *City of Rome v. Jordan*, 263 Ga. 26, 426 S.E.2d 861, 863 (1993)). There we held that the city did not have a duty to dispatch an ambulance, in part because there was "no explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party." *Id.* In this case, the Court of Appeals found that the designated evidence had failed to establish that Oakland City made any explicit assurances to Jason that it would act on his behalf "should he become imperiled." *Benton*, 684 N.E.2d at 253. "In the absence of a specific assurance," the court found that there can be no "private duty" owed to Jason and thus "no negligence on behalf of Oakland City." *Id.*

The Court of Appeals also looked at Jason's complaint to determine whether he alleged governmental "nonfeasance" or governmental "malfeasance." This analysis was prompted by *Henshilwood v. Hendricks County*, 653 N.E.2d 1062 (Ind.Ct. App.1995), *transfer denied*. *Henshilwood* holds that the *Mullin* test only applies where a governmental entity is alleged to have been negligent by failing to act— nonfeasance. Conversely, *Henshilwood* says that the *Mullin* test is not to be employed with respect to an "alleged affirmative act of negligence where the [governmental] entity itself has created the plaintiff's perilous situation"—malfeasance. *Henshilwood*, 653 N.E.2d at 1067. In this case, the Court of Appeals found that Jason's complaint alleged no "affirmative acts of negligence," but instead alleged nine instances of the City's "failure to act." It held that this finding justified the application of the *Mullin* test. *Benton*, 684 N.E.2d at 253–54.

*Discussion*

I

Over the last third of the twentieth century, Indiana courts have enunciated a number of legal principles in the course of deciding tort claims filed against governmental units. Given the substantial number of such cases, perhaps it was inevitable that some of these principles should have become the subject of confusion.

The present case requires us to review three areas of such confusion. First, the cases do not clearly define concepts referred to as a governmental unit's "public duty" and its "private duty." Second, it is difficult to distinguish whether a governmental unit is guilty of "nonfeasance" or "malfeasance," a distinction required in the wake of the decisions in *Mullin v. Municipal City of South Bend* and *Henshilwood v. Hendricks County, transfer denied*. And third, the passage and frequent amendment of the Indiana Tort Claims Act[3] has led to confusion as to whether

---

**1.** The affirmative defenses of governmental immunity cited in the City's answer were Ind. Code § 34-4-16.5-3(6)-(9), (11) (1993). (R. at 17.)

**2.** The trial court did not decide whether the City was immune under the Indiana Tort

Claims Act and the issue is not before us in this appeal.

**3.** Ind.Code §§ 34-4-16.5-1 through 34-4-16.5-22 (1993).

common law or statutory law applies to any given case.

## A

It is not necessary for purposes of this opinion to give a detailed history of governmental tort liability in Indiana. It is sufficient to observe that while older common law principles immunized governmental units from tort liability, that immunity was abrogated in a series of decisions beginning in the middle of this century.[4] The last of these decisions was *Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972). In *Campbell*, this Court reflected on the difficulties in distinguishing between "governmental functions" and "proprietary functions"[5] and concluded that establishing categories of governmental immunity was best left to the legislature. We therefore abrogated the common law doctrine of sovereign immunity in *almost* all respects. The breadth of its language eliminating sovereign immunity made clear that after *Campbell*, the tort liability of a governmental unit would be exactly the same as a private defendant in *almost* all respects.

But the word "almost" in the preceding two sentences is important. *Campbell* did acknowledge "that some vestige of the governmental immunity must be retained." *Id.* at 62–63, 284 N.E.2d at 737 (*quoting* W. Prosser, *Law of Torts* § 131, at 986 (4th ed.1971)). *Campbell* identified three situations where governmental units would not be liable for "acts or omissions which might cause damage to persons": (1) where a city or state fails to provide adequate police protection to prevent crime, *id.* (citing *Simpson's Food Fair, Inc. v. City of Evansville*, 149 Ind.App. 387, 272 N.E.2d 871 (1971), *transfer denied* ); (2) where a state official makes an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the state official for making such an appointment; and (3) where judicial decision-making is challenged, *id.* (citing *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

Before *Campbell*, the common law general rule (we could call it a "presumption") was that governmental units were immune from liability for their torts unless the courts had recognized an exception. *Campbell* reversed the presumption. Henceforth, the common law general rule would be that governmental units would be liable for any "breach of a duty owed to a private individual"—except for such claims as failure to prevent crime, appointment of an incompetent official, or an incorrect judicial decision.

*Campbell*, however, concluded with some language that is the genesis of the current difficulty in defining "private duty" and "public duty." *Campbell* said: "Therefore, it appears that in order for one to have standing to recover in a suit against the state there must have been a breach of *duty owed to a private individual*." *Id.* at 62–63, 284 N.E.2d at 737 (emphasis added). We will discuss *infra* how this "private duty" language came to stand—incorrectly—for an exception to a common law general rule of sovereign immunity, rather

4. First, the courts held that while local governmental units were immune under common law from tort liability in the performance of "governmental functions," they were not immune under common law in respect of "proprietary functions." *See Flowers v. Board of Comm'rs of County of Vanderburgh*, 240 Ind. 668, 671, 168 N.E.2d 224, 225 (1960). Then common law immunity in respect of governmental functions was abolished for municipalities, *Brinkman v. City of Indianapolis*, 141 Ind.App. 662, 668–69, 231 N.E.2d 169, 173 (1967), and for county units of government, *Klepinger v. Board of Comm'rs of County of Miami*, 143 Ind.App. 178, 201, 239 N.E.2d 160, 173 (1968). Next, common law immunity in respect of proprietary functions was abolished for state government in *Perkins v. State*, 252 Ind. 549, 558, 251 N.E.2d 30, 35 (1969). Finally, common law immunity in respect of governmental functions was abolished for state government in *Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972).

5. *See* discussion *supra* note 4.

than as the general rule from which governmental immunity is the exception.

## B

The "duty owed to a private individual" to which *Campbell* refers is the common law duty to use ordinary and reasonable care under the circumstances. *See Neal v. Home Builders, Inc.*, 232 Ind. 160, 168–69, 111 N.E.2d 280, 285 (1953), *reh'g denied; Union Traction Co. v. Berry*, 188 Ind. 514, 522, 121 N.E. 655, 658 (1919), *reh'g denied.* By abolishing the doctrine of sovereign immunity, *Campbell* recognized that all governmental units were bound by this duty, directly and also derivatively, that is, under a theory of respondeat superior.[6] For a breach of the duty of ordinary and reasonable care under the circumstances, Indiana common law would henceforth treat a governmental defendant no different from a non-governmental defendant.

For a brief period following *Campbell,* courts correctly concluded the phrase "duty owed to a private individual" was nothing more than a synonym for "duty of reasonable care." *See, e.g., Miller v. Griesel,* 261 Ind. 604, 308 N.E.2d 701 (1974); *Roberts v. State,* 159 Ind.App. 456, 307 N.E.2d 501 (1974). For example, in *Miller,* this Court recognized that if "immunity is not applicable under *Campbell* or if the defense is not raised, the [governmental] defendants must conform themselves to the same standard of conduct which applies to any citizen or corporation of this State." 261 Ind. at 610, 308 N.E.2d at 705. In *Roberts,* the court concluded that "[i]f a private duty to a private individual [is] found to exist, the doctrine of respondeat superior comes into operation and the State, and its various agencies and subdivisions, may be liable for the torts of its employees and agents." 159 Ind.App. at 462, 307 N.E.2d at 505 (citing *Brinkman,* 141 Ind.App. at 667, 231 N.E.2d at 172).[7]

However, both litigants and courts soon began to struggle with interpreting the

---

**6.** Scholarly commentary of the time noted:

In essence the *Campbell* decision rendered the doctrine of respondeat superior applicable to the state in its capacity as an employer. Therefore, since the liability of the state is now contingent upon that of its employees, the common-law privilege which traditionally protected government employees in the performance of public duties [ (i.e., the *discretionary* activity indigenous to the act of governing) ] now effects the retention of a public immunity for the state....

. . . .

... This conclusion is inevitable since *Campbell* appropriated the pre-existing framework presently utilized in suits against cities and counties and these entities are liable for the torts of their employees under the doctrine of respondeat superior.

Note, *Sovereign Immunity in Indiana—Requiem?,* 6 Ind. L.Rev. 92, 102–04 (1972). The aforementioned "pre-existing framework presently utilized in suits against cities and counties," *id.* at 104, was outlined in the Court of Appeals's decisions in *Brinkman* and *Klepinger. See Brinkman v. City of Indianapolis,* 141 Ind.App. 662, 667, 231 N.E.2d 169, 172 (1967) ("Absent the doctrine of municipal immunity, the municipal corporation may be found liable for a tort, but only if the relationship of principal and agent, or master and servant be found to exist between the municipality and the person who committed the tort. When there is an immune function, the doctrine of respondeat superior becomes immaterial. However, when immunity is abrogated, liability depends upon whether or not the doctrine of respondeat superior applies."); *Klepinger v. Board of Comm'rs of County of Miami,* 143 Ind.App. 178, 201, 239 N.E.2d 160, 173 (1968) ("We are of the opinion that the decision and reasoning of the *Brinkman* case should be applied to the counties of Indiana and, therefore, hold that the doctrine of governmental immunity as it applies to the counties of Indiana is hereby abrogated and that counties may now be held liable for the tort of its officers, agents or employees under the doctrine of respondeat superior.").

**7.** *See also Iglesias v. Wells,* 441 N.E.2d 1017, 1020 (Ind.Ct.App.1982) (discussing the situation in *Roberts* where "[t]he issue was whether the various defendants owed the plaintiff-prisoner a *public duty,* which would have barred his claim, or a *private duty* which would support his claim" and noting that the *Roberts* court relied on two previous decisions establishing a duty of reasonable care applicable to sheriffs in recognizing that "prison officials [also] owed their prisoners a duty of reasonable care") (each emphasis added).

phrase "duty owed to a private individual." They began to label those limited exceptions that *Campbell* carved out from the general rule of liability (failure to prevent crime, etc.) as "public duties," giving rise to convoluted analysis that seemed to support an entirely separate test for duty in cases involving a governmental defendant. *See, e.g., Board of Comm'rs of Delaware County v. Briggs,* 167 Ind.App. 96, 108, 337 N.E.2d 852, 862 (1975) ("We note initially that there seems to be no easy way of determining what is a private duty or what is a public duty."), *reh'g denied; Indiana State Highway Comm'n v. Clark,* 175 Ind. App. 358, 364, 371 N.E.2d 1323, 1327 (1978) ("[T]he State has misconstrued the respective meanings of private duty, public duty, and discretionary act."); *Seymour Nat'l Bank v. State,* 179 Ind.App. 295, 384 N.E.2d 1177, 1183 (1979), ([T]he proper application of the "private duty" test proclaimed in *Campbell* was ambiguous."), *overruled on other grounds,* 422 N.E.2d 1223 (Ind.1981).

This notion of a "private duty" occasionally metamorphosed into a "special duty" concept as a result of the use of the phrase "special duty" in *Simpson's Food Fair,* 149 Ind.App. at 392, 272 N.E.2d at 874 ("A special duty, however, does not arise merely because an individual requests police assistance."). This further reinforced the idea that a separate test existed for analyzing claims against governmental defendants. *See, e.g., Tanasijevich's Estate v. City of Hammond,* 178 Ind.App. 669, 673, 383 N.E.2d 1081, 1084 (1978) ("The precise question before us is whether a *special* duty was owed to Tanasijevich by the Hammond Police.") (emphasis in original); *City of Hammond v. Cataldi,* 449 N.E.2d 1184, 1187 (Ind.Ct.App.1983) ("Indiana courts have considered the special duty

concept in relation to police work.") (citing *Simpson's Food Fair* ); *Ayres v. Indian Heights Volunteer Fire Dep't,* 482 N.E.2d 732, 740–41 (Ind.Ct.App.1985) (labeling the discussion in Part C of its opinion: "Special or Private Duty" Analysis), *vacated,* 493 N.E.2d 1229 (Ind.1986).

In conjunction with the development of this "special duty" analysis, courts also began a separate dialogue concerning "particular circumstances [where] a governmental unit ... [could], by its conduct, narrow an obligation which it owes to the general public into a *special* duty to an individual." *Tanasijevich's Estate,* 178 Ind.App. at 673, 383 N.E.2d at 1084 (emphasis in original); *see also Greathouse v. Armstrong,* 616 N.E.2d 364, 368 (Ind.1993) ("The trial court correctly determined that the estate failed to show that a *special duty or relationship* existed between the decedent and the Sheriff's Department and the County.") (emphasis added). This belief that for a duty "to be private, a duty must be particularized to an individual," *id.* (quoting *Simpson's Food Fair,* 149 Ind. App. at 391, 272 N.E.2d at 874), added to the confusion by further supporting the idea of a separate test for governmental defendants. In retrospect, it added little in terms of useful analysis as all victims of governmental torts feel the sting, imagined or not, of a "particularized duty" to them.

### C

By the time we decided *Mullin v. Municipal City of South Bend* and the Court of Appeals decided (and we denied transfer in) *Henshilwood v. Hendricks County, Campbell* had been transformed. *Campbell* had held that all governmental units were bound, both directly and under a theory of respondeat superior,[8] by the

---

8. Dean Foust in his 1974 survey of Indiana law recognized that "the respondeat superior approach was first suggested by the *Campbell* court" and "[a]ccordingly, the doctrine of respondeat superior [was] now the touchstone of state liability." Cleon H. Foust, *Torts, 1974*

*Survey of Indiana Law,* 8 Ind. L.Rev. 264, 275 (1974).

Foust's analysis was cited by the court in *Board of Comm'rs of Delaware County v. Briggs.* There the question presented was whether the *Campbell* requirement of a "private duty" was

common law duty to use ordinary and reasonable care under the circumstances, except for such claims as failure to prevent crime, appointment of an incompetent official, or an incorrect judicial decision. But subsequent decisions had taken this general-rule-with-limited-exceptions and bifurcated it into concepts of "private duty" and "public duty." This resulted in highly abstract, almost metaphysical debates over whether the duty alleged to have been breached was a "private" one or a "public" one.

■ Reflecting on these developments, we return to and reaffirm *Campbell*. We hold that *Campbell* is properly applied by presuming that a governmental unit is bound by the same duty of care as a nongovernmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions (prevent crime, appoint competent officials, or make correct judicial decisions) that it should be treated as one as well. We refuse to articulate a one-size-fits-all test for determining when a duty is so closely akin to one of the limited exceptions that it should be treated as one as well. As we have seen, the "governmental function-proprietary function" test did not work. Neither has the public duty-private duty test.[9] The best we can say as a general proposition is that because the duty of care is so

pervasive, any additional exceptions will be rare and identified on a case-by-case basis.

## D

*Mullin* and *Henshilwood*, though both correctly decided, added another layer of confusion to the subject—the nonfeasance-malfeasance distinction.

### D–1

In *Mullin*, the duty alleged to have been breached was the dispatch of emergency services. 639 N.E.2d at 280. The plaintiff's neighbor had called 911 and notified the city that the plaintiff's house was on fire and that people were likely inside. We analyzed the claim by asking whether the city's duty was a "private" or a "public" one and adopted the *"City of Rome"* test "for identifying the existence of a private duty."[10] Finding that the test was not met in these circumstances, we held that the plaintiff "failed to establish the existence of a private duty."

The approach we took in *Mullin* was not consistent with *Campbell*. Rather than asking whether the duty alleged to have been breached—dispatch of emergency services—was a private duty or a public duty, we should have asked whether this duty was so closely akin to one of the limited exceptions (prevent crime, appoint competent officials, or make correct judicial decisions) identified in *Campbell* that

---

an additional test that must be met by the plaintiff over and above a showing that the act of the agent was performed in the exercise of a ministerial action rather than a discretionary action, or whether the court [was] simply using different words to restate the one basic test.

*Briggs*, 167 Ind.App. 96, 108, 337 N.E.2d 852, 861 (1975) (citing Foust, *supra*). The Court of Appeals (in affirming a judgment entered by Henry Circuit Court Judge Wesley W. Ratliff, Jr.) correctly determined that

the apparent exception to the abolishment of sovereign immunity that the *Campbell* court refers to is nothing more than a reference to the state tort immunity that results if a claim of respondeat superior liability is asserted against the State in a case where the servant himself is not liable because of

the protection of a personal governmental immunity.

*Id.*

9. Nor, as we shall see in a moment, has the nonfeasance-malfeasance test.

10. The test we adopted for imposing a private duty on governmental defendants had three parts. It required: (1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; and (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking. *Mullin*, 639 N.E.2d at 284 (adopting the reasoning of *City of Rome v. Jordan*, 263 Ga. 26, 426 S.E.2d 861, 863 (1993)).

it should be treated as one as well. Thus, our use of the *City of Rome* test as a technique for determining whether a "private duty" existed had unfortunate implications for other cases, as *Henshilwood* soon showed.

### D–2

*Henshilwood* involved an entirely different kind of claim. There a county was alleged to have allowed contaminated water in a county-maintained ditch to overflow onto private land. *Henshilwood,* 653 N.E.2d at 1064–65. In the wake of *Mullin,* the trial court applied the *City of Rome* test and found that the county had no duty to the private landowners. The Court of Appeals reversed, finding that *Mullin* was not applicable to these facts. *Mullin,* the court said, "applies only in determining whether a duty is owed based on a governmental entity's alleged failure to act. The test does not apply to an alleged affirmative act of negligence where the entity itself has created the plaintiff's perilous situation." *Henshilwood,* 653 N.E.2d at 1067. *Henshilwood* referred to the failure-to-act as "nonfeasance" and subsequent cases have referred to affirmative-acts-of-negligence as "malfeasance."

*Henshilwood* reached the correct result. The duty alleged to have been breached was the duty of care, not one even remotely akin to any of the *Campbell* limited exceptions. But it blew *Campbell* even

further from its original moorings. Instead of starting with the presumption of the common law duty of care applicable to all defendants, still another test for duty had been introduced. The plaintiff in a tort action against a governmental unit would now have to negotiate both a public duty-private duty test as well as a nonfeasance-malfeasance test. It seems to us that the subsequent cases have had every bit as difficult a time distinguishing nonfeasance and malfeasance as the earlier cases had distinguishing private duty and public duty.[11] And for the same reason—all victims of governmental torts feel the sting, imagined or not, of malfeasance to them.

■ We hold that the test enunciated in *Mullin* is only to be employed when a governmental unit is alleged to have breached a duty to provide emergency services[12] and that a governmental unit's duty with respect to an alleged act of negligence does not depend on whether the negligence is claimed to be the result of nonfeasance or malfeasance.

### E

Before proceeding to the claim at issue in this case, it is worth noting that the foregoing discussion addresses only the common law. It does not relax any of the extensive protections from tort liability af-

11. *See, e.g., Serviss v. State, Dep't of Natural Resources,* 711 N.E.2d 95 (Ind.Ct.App.1999); *Kantz v. Elkhart County Highway Dep't,* 701 N.E.2d 608 (Ind.Ct.App.1998), *transfer denied; Aldridge v. Indiana Dep't of Natural Resources,* 694 N.E.2d 313 (Ind.Ct.App.1998), *transfer denied; Willis v. Warren Township Fire Dep't,* 672 N.E.2d 484 (Ind.Ct.App.1996), *transfer denied; McCormick v. State, Dep't of Natural Resources,* 673 N.E.2d 829 (Ind.Ct.App.1996); *Benthall v. City of Evansville,* 674 N.E.2d 580 (Ind.Ct.App.1996), *transfer denied.*

12. We continue to believe that the duty to provide emergency services implicated in *Mullin* is sufficiently similar to the "prevent crime" exception in *Campbell* to raise the possibility of immunity. And we continue to believe that the *City of Rome* test is appropri-

ate for determining whether a governmental unit qualifies for immunity for failure to dispatch emergency services (but only for that purpose).

We acknowledge that this point appears to have been rendered moot by the passage of subsection (18) of Ind.Code § 34–4–16.5–3 (repealed effective July 1, 1998) (see current version at Ind.Code § 34–13–3–3), which grants a governmental entity immunity under the Tort Claims Act for the operation of "an enhanced emergency communication [or '911'] system." *Accord Barnes v. Antich,* 700 N.E.2d 262, 266 n. 6 (Ind.Ct.App.1998) (holding that "a plain reading of Ind.Code 34–4–16.5–3(18) leads inescapably to the conclusion that the legislature intended to afford immunity from claims arising out of a munici-

forded Indiana governmental units by statute.[13]

In response to *Campbell's* conclusion that the interests—financial and otherwise—of governmental units in being protected from tort liability were "questions which properly belong to the legislature," *Campbell*, 259 Ind. at 61, 284 N.E.2d at 736, the Indiana General Assembly reacted by enacting the Indiana Tort Claims Act ("ITCA").[14] The ITCA established limitations on the judicially decreed rights to sue and recover from governmental entities and their employees through procedural mechanisms such as notice requirements and limitations on recovery. The ITCA also established extensive immunity provisions which shield governmental units from liability even in those cases where a common law duty of care exists.

In the years that followed, plaintiffs pursuing tort claims against the government have been required to navigate their way through the various immunity provisions of the ITCA and through subsequent decisions which construed the extent and scope of the various immunity provisions. *See, e.g., Peavler v. Board of Comm'rs of Monroe County*, 528 N.E.2d 40, 46 (Ind.1988); *Seymour Nat'l Bank v. State*, 422 N.E.2d 1223, 1226 (Ind.1981), *overruled by Quakenbush v. Lackey*, 622 N.E.2d 1284, 1290 (Ind.1993);[15] *Barnes v. Antich*, 700 N.E.2d 262, 266 n.6 (Ind.Ct.App.1998), *transfer denied.* In general, it is only after a determination is made that a governmental defendant is not immune under the ITCA that a court undertakes the analysis of whether a common law duty exists under the circumstances. *Greathouse, Mullin* and *Henshilwood* all follow

this pattern. In returning to the moorings of *Campbell*, we also return to the principle that it is the legislature, and not the courts, that is in the best position to determine the nature and extent to which governmental units in Indiana should be insulated from tort liability. As we noted above, whether the legislature has insulated Oakland City is not part of this appeal.

## II

In this case, the issue of duty arises out of Jason's claim that Oakland City was negligent in its operation of the swimming area. To sustain an action for negligence, Jason must establish: (1) a duty owed by the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), *reh'g denied.* The first of these three elements, the existence of a duty, is a question of law for the court to determine. *Gariup Constr. Co. v. Foster*, 519 N.E.2d 1224, 1227 (Ind.1988).

Jason asserts that the City owed him a duty to warn of the danger of diving in a particular area of the lake. The City contends that insofar as it had such a duty, it was a general duty owed to the public and not to Jason individually. We hold that the City is not entitled to summary judgment as a matter of law. As discussed at length in Part I *supra*, all governmental units are bound, both directly and under the theory of respondeat superior, by the common law duty to use ordi-

---

pality's operation and use of [a '911' service]"), *transfer denied.*

**13.** *See* discussion *supra* note 12 for a striking example.

**14.** As a matter of state constitutional law, the State can provide the means for bringing suits against itself, including procedural limits and possible defenses. Ind. Const. art. IV, § 24; *see also Maroon v. State, Dep't of Mental Health*, 411 N.E.2d 404, 415 (Ind.Ct.App. 1980).

**15.** *Quakenbush v. Lackey* employed the concept of private duty to analyze the availability of one of the ITCA's immunity defenses. As a general matter, we find *Quakenbush's* concept of private duty consonant with the "duty owed to a private individual" discussed *supra*, especially in Part I–B. However, detailed discussion of this point (as well as the interaction of common law principles and statutory immunities) is beyond the scope of this opinion.

nary and reasonable care under the circumstances except for a few exceptions not applicable here. Governmental units have a long-recognized duty to maintain a public recreational facility in a reasonably safe manner.[16] *See, e.g., City of Bloomington v. Kuruzovich,* 517 N.E.2d 408, 414 (Ind. Ct.App.1987) ("[T]he state and its units are liable for failure to maintain reasonably safe parks."), *transfer denied;* [17] *Mills v. American Playground Device Co.,* 405 N.E.2d 621, 627 (Ind.Ct.App.1980) (defining a municipality's duty as one "to exercise ordinary care to make public parks reasonably safe for persons rightfully frequenting and using the parks and equipment"), *reh'g denied;* [18] *Clayton v. Penn Central Transp. Co.,* 176 Ind.App. 544, 549, 376 N.E.2d 524, 527 (1978) (citing *Campbell* and reversing summary judgment for the defendant city on the issue of duty as material facts existed as to whether a "duty of reasonable care" was owed "to the individual children and parents to make the park a safe place for children to play"); *see also Sherfey v. City of Brazil,* 213 Ind. 493, 495, 502, 13 N.E.2d 568, 569, 572 (1938) (Minor "severely injured [in a city park] when he ran into a bed of concealed fire.") ("[A] municipality may be liable for its negligence in the management of its public parks"); *City of Terre Haute v. Webster,* 112 Ind.App. 101, 103, 105, 40 N.E.2d 972, 973 (1942) (Minor injured in a city park where he "stepped and fell into a hole just west of a certain stone drinking fountain ... [while approaching] to get a drink.") ("[A] city is liable for structural defects in a city park where [the] structural defects are due to a lack of reasonable care on the part of [the] city to make [the] park a reasonably safe place for persons using [the] park for park purposes.") (collecting cases).

In so holding, we observe that *Mullin* was recently misapplied in two cases implicating the government's duty to maintain its public recreational facilities in a reasonably safe manner. *See Aldridge v. Indiana Dep't. of Natural Resources,* 694 N.E.2d 313 (Ind.Ct.App.1998), *transfer denied; Plummer v. Board of Comm'rs of St. Joseph County,* 653 N.E.2d 519 (Ind.Ct. App.1995), *transfer denied.* It was unnecessary to apply the *Mullin* test in those cases for both a general and a specific reason. First, the *Mullin* test is only *implicated* when it appears that the duty alleged to have been breached is sufficiently akin to one of the exceptions identified in *Campbell* (i.e., prevent crime) that further analysis is necessary; that was not the situation in either of these cases. Second, the *Mullin* test is only *employed* when the duty alleged to have been breached is the duty to dispatch emergency services; again, that was not the situation in either of these cases. While the correct result was reached in both instances, each decision improperly created an additional measure of governmental immunity never before recognized at common law and not specifically accounted for by

16. Implicit in our statement is the understanding that (1) this duty also includes the responsibility or duty to warn of potentially dangerous activities or conduct, and that (2) both a park and a swimming facility (lake or pool) constitute a "public recreational facility."

17. In *City of Bloomington,* a softball player sued the city to recover for personal injuries sustained when he tripped over a manhole cover as he chased a fly ball. The city claimed that it was shielded from liability under several provisions of the ITCA, including the "discretionary" provision. 517 N.E.2d at 414–15. The city's immunity-based arguments were rejected, and the city was found liable for the injury in a park which it maintained as open to the public, thereby incurring the duty to design the park safely and keep it safe from hazards. *Id.*

18. In *Mills,* the plaintiff was injured when he fell from a slide installed in a Gas City park. The city argued that it was immune from liability under the ITCA because it was performing a discretionary function when it provided the park. The Court of Appeals disagreed noting, "Once [Gas City] opted to provide a playground and to equip it, a ministerial duty arose to provide reasonably safe premises." 405 N.E.2d at 626.

the legislature in the ITCA immunity provisions.

Because the City did have a duty, as part of its common law duty of ordinary and reasonable care, to warn where diving is dangerous, it was not entitled to summary judgment on the issue of duty. Genuine issues of material fact remain with respect to whether the City was negligent in its operation of the swimming facility and more specifically whether it failed to warn of any dangerous diving conditions.

### Conclusion

We grant transfer, vacate the opinion of the Court of Appeals, reverse the trial court's grant of summary judgment, and remand for further proceedings.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.