Eucy O'BANNON, Appellant–Plaintiff,

v.

CITY OF ANDERSON, et al.,
Appellee–Defendant.

No. 48A02–9910–CV–698.

Court of Appeals of Indiana.

June 20, 2000.

Patrick R. Ragains, Smith & Ragains, Anderson, Indiana, Attorney for Appellant.

Timothy S. Lanane, Anderson, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellant-plaintiff Eucy O'Bannon appeals the trial court's grant of summary judgment in favor of appellee-defendant City of Anderson and its police department (the City). Specifically, O'Bannon argues that the grant of summary judgment was error because the City was not entitled to sovereign immunity pursuant to IND.CODE § 34–13–3–3(7).

### FACTS

The facts most favorable to the non-movant reveal that O'Bannon lived at 2226 Halford Street in Anderson, Indiana on October 6, 1995. On that night, Anderson police officers were chasing an armed felon, Trevor Nunn, who had attempted to kill a police officer. Nunn had also fired

upon the officers who assembled in front of O'Bannon's home, to which he had retreated without O'Bannon's permission. The Anderson police officers fired shots into O'Bannon's home, searched her home, and seized her momentarily in the course of arresting Nunn.

On June 25, 1997, O'Bannon filed a complaint against the City based upon this incident and alleging negligent infliction of emotional distress, trespass, and illegal search and seizure. The City filed its answer and, on November 23, 1998, filed affidavits and a motion for summary judgment. O'Bannon filed her response to the motion on December 22, 1998 and a brief in support of response to defendant's motion for summary judgment. After hearing argument on the motion for summary judgment, the trial court granted the City's motion by entry on June 10, 1999. O'Bannon now appeals.

## DISCUSSION AND DECISION

O'Bannon argues that the City was not entitled to sovereign immunity under I.C. § 34–13–3–3(7), that there was a genuine question of fact regarding the City's common law duty to her, and that summary judgment should be reversed for that reason. Specifically, she argues that the City and its police officers had a "private duty" to her not to trespass on her property, not to search her home or seize her person and not to negligently inflict emotional distress. Appellant's brief at 4.

We note initially our standard of review for a grant of summary judgment. Summary judgment should be granted only if the designated evidentiary material shows that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Askren Hub States Pest Control v. Zurich Ins.*, 721 N.E.2d 270, 274 (Ind.Ct.App. 1999). Upon review, we do not search the entire record for evidence to support the judgment, but may only consider the evidence which has been specifically designated to the trial court. *North Snow Bay,*

*Inc. v. Hamilton,* 657 N.E.2d 420, 422 (Ind.Ct.App.1995). On appeal from a grant of summary judgment, the appellant has the burden of proving that the trial court erred in determining that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Sweet v. Art Pape Transfer, Inc.,* 721 N.E.2d 311 (Ind.Ct. App.1999).

The Indiana Tort Claims Act renders immune from liability police officers acting in the course of their employment and their governmental employers if a loss results from "the adoption or enforcement of or failure to adopt or enforce a law ..., unless the act of enforcement constitutes false arrest or false imprisonment." I.C. § 34–13–3–3(7). Our supreme court has interpreted this statute to mean that law enforcement immunity would not attach in suits which were based upon a governmental unit's "private duty" to individuals, to which O'Bannon refers. For example, our supreme court held that immunity would not attach in suits based upon negligent driving of a squad car on the way to the scene of a crime, *Quakenbush v. Lackey,* 622 N.E.2d 1284, 1290–91 (Ind.1993); for negligent parking of a police vehicle, *Belding v. Town of New Whiteland,* 622 N.E.2d 1291, 1293 (Ind.1993); or the use of excessive force in effecting an arrest, *Kemezy v. Peters,* 622 N.E.2d 1296, 1297 (Ind.1993).

However, most recently, our supreme court has noted that the "private" and "public" duty distinction has led to confusion in Indiana case law. *Benton v. City of Oakland City,* 721 N.E.2d 224, 226 (Ind. 1999). It called into question the cases which relied upon such reasoning and which are the basis of O'Bannon's claim. It substituted in the place of "private/public duty" analysis the common law presumption that a governmental unit "is bound by the same duty of care as a nongovernmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions that it

should be treated as one as well."[1] *Id.* at 230. In addition, the supreme court noted that it is only *after* a determination is made that a governmental defendant is not immune under the [Indiana Tort Claims Act] that a court undertakes the analysis of whether a common law duty exists under the circumstances. *Id.* at 232.

In this case, O'Bannon's analysis fails to explain why the City's actions should not come under the immunity statute, I.C. § 34–13–3–3(7). The officers were clearly seeking to enforce a law, and the act of enforcement did not involve false arrest or false imprisonment. However, O'Bannon appears to argue that the officer's presence in her house was illegal or that excessive force was used in effecting the arrest, thus endangering her and her grandchildren, humiliating her, and causing her a loss of quality of life. We will analyze her claims as one stating that the arresting officers' actions were in some way illegal, and for this reason sovereign immunity should not apply.

■ We first address the argument that shooting into her home gave rise to tort liability unprotected by I.C. § 34–13–3–3(7). Excessive force claims are governed by a Fourth Amendment objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The excessive force claim must be evaluated from the perspective of the "reasonable officer on the scene, rather than with the $^{20}/_{20}$ vision of hindsight." *Id.* at 396–97. Factors to be considered in determining the appropriate amount of force include the severity of the crime involved, whether the suspect is an immediate threat to the officers, and whether the suspect is attempting to resist or evade arrest. *Id.*

■ In Indiana, I.C. § 35–41–3–3(b) reflects the same principles and provides in relevant part:

(b) A law enforcement officer is justified in using reasonable force if the officer reasonably believes that the force is necessary to effect a lawful arrest. However, an officer is justified in using deadly force only if the officer:

(1) has probable cause to believe that the deadly force is necessary:

(A) To prevent the commission of a forcible felony; or

(B) To effect an arrest of a person who the officer has probable cause to believe poses a threat of serious bodily injury to the officer....

Furthermore, while the Fourth Amendment requires a search warrant before lawfully entering a premises, the exceptions to this requirement include risk of bodily harm or death. *Harless v. State,* 577 N.E.2d 245, 248 (Ind.Ct.App.1991).

■ In this case, O'Bannon has not demonstrated that the officers' use of force was unwarranted or excessive. Instead, the officer's actions were reasonable under a Fourth Amendment analysis and I.C. § 35–41–3–3(b). Nunn had attempted to kill one police officer and had fired at the assembled officers from inside O'Bannon's home. Record at 15, 17, 19. Thus, the officers acted legally when they fired into O'Bannon's home. Furthermore, the risk of bodily harm or death was such that it was legal for the officers to enter into her home without a warrant, to search the home, and to momentarily detain O'Bannon in the process. *See Harless,* 577 N.E.2d at 248. These acts were performed while officers effected the arrest of a fleeing, armed felon. R. at 14–19. O'Bannon has not made any persuasive argument that the police presence in her home was illegal or that they negligently breached a duty to her. Because the officers were enforcing the law, and their actions did not constitute false imprisonment or false arrest, their conduct is immunized. I.C. § 34–13–3–3(7).

1. The common law exceptions include: failure to prevent crime, appointment of an incompetent official, or an incorrect judicial decision.

Furthermore, we note that this case is nearly identical to another in which summary judgment was granted and upheld on appeal, *State v. May,* 469 N.E.2d 1183 (Ind.Ct.App.1984). In that case, Indiana State Police officers were chasing a fleeing murder suspect who took refuge in the home of plaintiff May, seizing three hostages as he did so. *May,* 469 N.E.2d at 1183. The state SWAT team fired tear gas and entered the home, freeing the hostages. *Id.* The Mays sued the state seeking to recover for damage to their home. *Id.* In that case, we held the State immune from liability under the Indiana Tort Claims Act, reasoning that the legislature granted immunity to a public entity for losses incurred while the State or its employees enforced the law. *Id.* at 1183–84. The facts in this case, as in *May,* constitute a clear instance of a need for the policy of governmental immunity and a clear application of I.C. § 34–13–3–3(7).

Judgment affirmed.

RILEY, J., and KIRSCH, J., concur.