CITY OF ANDERSON, et al.,
Appellants–Defendants,

v.

Timothy DAVIS, Appellee–Plaintiff.

No. 30A01–0002–CV–51.

Court of Appeals of Indiana.

Feb. 21, 2001.

Robert W. Rock, Anderson, IN, Attorney for Appellants.

Mark Dudley, Young Riley Dudley & DeBrota, Indianapolis, IN, Richard Walker, Anderson, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

The City of Anderson and Anderson police officer Steven Stoops (collectively, the City), defendants below, appeal the court's judgment, following a bench trial, in favor of Timothy Davis, plaintiff below. In particular, the City contends that it was immune from liability for Davis's personal injuries pursuant to the Indiana Tort Claims Act (ITCA, or the Act). We reverse.

### Issue

The sole issue for our review is whether the City was immune from liability for

Davis's damages under the law enforcement immunity provision of the ITCA.[1]

## Facts and Procedural History

On May 24, 1995, Madison County Sheriff Scott Mellinger was driving when he observed a teenage male walking along the road. The individual matched the description of a teenager who had reportedly walked away from the Madison County Juvenile Center, where he was being detained upon charges of auto theft. When the juvenile realized he had been spotted, he retreated into a nearby wooded area. Sheriff Mellinger called his office for assistance. Officers from the Madison County Sheriff's department, including a county police dog and dog handler, as well as officers from the Pendleton police department, the Anderson police department, and the Indiana State Police, arrived and took positions on the perimeter of the area in which the teenager was thought to be hiding. Officer Stoops of the Anderson police department and his dog Chester eventually relieved the Madison County Sheriff's department dog and its handler.

Among the officers who responded to Sheriff Mellinger's call was Davis, who at that time was the Chief Deputy in the Madison County Sheriff's department. Davis parked his police vehicle near the edge of the wooded area into which the suspect fled, and began to search the area on foot. While walking around the area, he heard over the police radio in his car that officer Stoops and Chester had arrived and were located somewhere in the area. At one point, Davis heard something in the woods. He proceeded to investigate, and encountered Madison County Sheriff's department Captain Thompson in the vicinity of Captain Thompson's vehicle. Captain Thompson advised that officer Stoops and Chester were in the area.

At some point, Davis began to walk back to his car.

Around this time, Chester alerted to what officer Stoops thought was the scent of the suspect. Officer Stoops then made an announcement over his police radio that he would deploy Chester in an off-leash search. Officer Stoops also called out and announced that Chester would be released in the area. Davis heard this announcement. Officer Stoops released the dog, and Chester began to search the area. At some point he bolted, and officer Stoops followed. When officer Stoops caught up with his dog, he saw it attacking Davis. Davis sustained bites to his groin, forearm and leg, which required extensive medical treatment.

On May 22, 1997, Davis filed a Complaint in the United States District Court for the Southern District of Indiana against the City, officer Stoops, and then-Anderson Police Chief Ronald Rheam. Davis alleged that the City's use of Chester under the circumstances amounted to excessive force and violated Davis's civil rights, and that Chester's attack was caused by the defendants's negligence. The defendants apparently moved for summary judgment on Davis's excessive force claims, and on the ground that Davis's remaining negligence claims raised no federal issues. On April 30, 1998, the court issued its Order on Summary Judgment, rejecting Davis's allegations of excessive force, and dismissing Davis's remaining negligence claims for lack of a federal issue. The court contemporaneously issued its Order of Judgment, stating Davis's excessive force claims were dismissed with prejudice, and that this determination constituted a final judgment. There is no indication in the record that Davis appealed this judgment.

1. The City also challenges the qualification and testimony of one of Davis's experts, claims that Davis was contributorily negligent, and argues that the trial court lacked subject matter jurisdiction over this case by virtue of the exclusivity provision of the Worker's Compensation Act. Because of our resolution of the governmental immunity issue, it is not necessary to address these claims.

On May 29, 1998, Davis filed another Complaint in the Madison County Superior Court against the same defendants, this time raising only negligence claims. The defendants denied Davis's allegations, and asserted the affirmative defense of governmental immunity under the ITCA. They also contended that any excessive force claims implicated in the complaint were barred pursuant to the doctrine of collateral estoppel. The defendants moved for summary judgment based on their immunity claim on July 21, 1998. On September 9, 1998, venue was transferred to the Hancock County Superior Court. The court denied the City's summary judgment motion on June 11, 1999. On June 22, 1999, the defendants moved to dismiss Davis's complaint on the ground that Davis was injured by the actions of a co-employee, and that the trial court lacked subject matter jurisdiction pursuant to the exclusivity provision in the Indiana Worker's Compensation Act. The court had not ruled on this motion by the time the matter proceeded to bench trial on June 29 and 30, 1999.

The trial court issued its Judgment Order, as well as findings of fact and conclusions of law, on January 4, 2000. The court rejected the defendants's jurisdictional challenge, dismissed Chief Rheam for lack of evidence of his liability, and concluded that the use of Chester under the circumstances was negligent. The court also again concluded that the defendants were not immune under the ITCA, and entered judgment in favor of Davis in the amount of $200,000. The City now appeals.

### Discussion and Decision

#### A. Standard of Review

While the issue of a governmental entity's immunity from liability under the ITCA may require extended factual development, the issue remains a question of law for the courts. *Minks v. Pina,* 709 N.E.2d 379, 382 (Ind.Ct.App.1999), *trans. denied.* We therefore review claims of governmental immunity de novo. *Man-gold ex rel. Mangold v. Indiana Department of Natural Resources,* 720 N.E.2d 424, 427 (Ind.Ct.App.1999), *reh'g denied.* We owe the trial court no deference, and we will substitute our judgment for that of the trial court if necessary. *Pedraza ex rel. Pedraza v. Grande,* 712 N.E.2d 1007, 1010 (Ind.Ct.App.1999).

#### B. Analysis

The City claims that it was immune from liability for officer Stoops's alleged negligence pursuant to the "law enforcement immunity" provision of the ITCA. Davis contends that the City is not immune because the use of Chester under the circumstances did not constitute the "enforcement of a law" within the meaning of the Act. Our analysis of these competing claims requires a brief review of the confusing and perpetually fluctuating status of the immunity granted to law enforcement personnel under the ITCA.

##### 1. Law Enforcement Immunity Under the ITCA

In *Campbell v. State,* 259 Ind. 55, 284 N.E.2d 733, 737 (1971), the Indiana Supreme Court ruled that governmental entities in Indiana owe a common law duty to use ordinary and reasonable care under the circumstances, and have no common law immunity for breaches of this duty except in cases involving the failure to provide adequate police protection to prevent crime, the appointment of an incompetent official, and erroneous judicial decision making. The Indiana General Assembly subsequently enacted the ITCA, currently codified at Indiana Code sections 34–13–3–1 to 25, expanding the immunity of governmental entities to certain cases where a common law duty of care otherwise exists. *See* IND.CODE § 34–13–3–3. Among those areas of governmental activity exempted by the ITCA from liability are certain law enforcement activities. Section 3(7) of the ITCA, in its current form, provides:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

. . . .

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the enforcement constitutes false arrest or false imprisonment.

IND.CODE § 34–13–3–3(7).

The Indiana Supreme Court originally interpreted this provision to mean that government entities would be immune under the ITCA for "all acts of enforcement save false arrest and imprisonment." *Seymour National Bank v. State,* 422 N.E.2d 1223, 1226 (Ind.1981), *clarified on rehearing,* 428 N.E.2d 203. The supreme court subsequently disavowed *Seymour*'s broad view of law enforcement immunity under the ITCA on the ground that *Seymour*'s interpretation was inconsistent with the intent of the legislature. *Tittle v. Mahan,* 582 N.E.2d 796, 800 (Ind.1991). In *Tittle,* the court explained that by enacting the ITCA's law enforcement immunity provision, the legislature intended to include "only those activities attendant to effecting the arrest of those who may have broken the law." *Id.* at 801. For other actions taken by law enforcement officers, government entities would be subject to liability to the extent allowable at common law. *Id.*

The supreme court revisited the issue and overruled *Tittle* two years later in *Quakenbush v. Lackey,* 622 N.E.2d 1284 (Ind.1993). In *Quakenbush,* the supreme court expanded its definition of "law enforcement" beyond the bounds set by *Tittle,* explaining that its conclusion in *Tittle* regarding the legislature's intent to immunize only actual attempts to effect ar-

rests had produced an unworkable rule of law, and was, after further reflection, analytically unsound. *Id.* at 1287. The court stated that "the scope of the phrase 'adoption or enforcement of a law' . . . is not limited to traditional law enforcement activities such as the arrest or pursuit of suspects by police. Rather, in its broader (and correct) meaning, Section 3(7) applies to the decision of any governmental entity and its employees about whether to adopt or enforce any statute, rule, or regulation." *Id.* at n. 3. Although *Quakenbush* expanded the meaning of "law enforcement" under the ITCA,[2] the court circumscribed the availability of immunity for such enforcement. The majority in *Quakenbush* decided that, by enacting the law enforcement immunity provision of the ITCA, the legislature actually intended to "codify the common law as it existed at the time the Act was passed." *Id.* at 1290–1291. The court explained that when the ITCA was enacted, "[t]he state of the common law was such that governments and their employees were subject to liability for the breach of private duties owed to individuals, but were immune from liability for the breach of public duties owed to the public at large." *Id.* at 1291. Thus, under *Quakenbush,* governmental entities would be immune from liability for losses stemming from law enforcement activities that breached public duties, but not for losses resulting from the violation of private duties. The court went on to determine that the negligent operation of a police car involved the breach of a private duty, and that the officer in question was not immune from liability. *Id.*

The supreme court's recent decision in *Benton v. City of Oakland City,* 721 N.E.2d 224 (Ind.1999) nullified much of *Quakenbush.* In *Benton,* the court jettisoned *Quakenbush's* complicated concep-

---

**2.** The supreme court quickly reined in *Quakenbush's* definition of law enforcement in *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 283 (Ind.1994), in which the court explained that *Quakenbush* actually meant "that the scope of 'enforcement' is limited to those activities in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof."

tion of common law governmental duty and immunity, and explained that under the common law as set forth in *Campbell,* governmental entities were simply under a general duty to exercise reasonable care, subject to the common law immunities identified in *Campbell.* *Id.* at 229–230. The court rejected *Quakenbush's* distinction between "private" and "public" duties owed by government entities, determining that the distinction was so "highly abstract" and "almost metaphysical" as to be unworkable in practice. *Id.* at 230. Although *Benton* did not directly involve immunity under the ITCA, the court reaffirmed "the extensive protections from tort liability afforded Indiana governmental units" under the ITCA, and explained that analysis of this immunity should focus on the ITCA itself rather than on judicially created tests by stating that, "[i]n returning to the moorings of *Campbell,* we also return to the principle that it is the legislature, and not the courts, that is in the best position to determine the nature and extent to which governmental units in Indiana should be insulated from tort liability." *Id.* at 232.

### 2. Application of Law

■ In light of our supreme court's abrogation of the public duty/private duty test for ascertaining the existence of law enforcement immunity under the ITCA, and the court's reaffirmation of the primacy of the intent of the legislature, our task in this case is clear. We must determine whether, under the terms of the ITCA, the City was entitled to immunity for officer Stoops's alleged negligence. As noted above, the law enforcement immunity provision of the ITCA shields "a government entity or an employee acting within the scope of the employee's employment" from liability for losses resulting from the "enforcement of ... a law ... unless the act of enforcement constitutes false arrest or false imprisonment." IND.CODE § 34–13–3–3(7). There is no question here that officer Stoops was the City's employee at the time of the incident, and Davis has not alleged false arrest or false imprisonment. Moreover, Davis does not contend that officer Stoops was acting outside the scope of his employment when he deployed Chester.[3] We must therefore determine whether officer Stoops was engaged in the "enforcement of a law" at the time of Chester's attack.

[6] As noted above, the supreme court in *Mullin* explained that "the scope of the term 'enforcement' is limited to those activities in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." 639 N.E.2d at 283. Davis contends that the City's use of Chester did not constitute law enforcement because the City used the dog despite knowing that Chester had inappropriately attacked people in the past. Davis's argument here essentially describes his negligence claim. Davis cites no authority, and there appears to be none, suggesting that when a police officer performs his duties in

3. We would conclude that officer Stoops was acting within the scope of his employment, if called upon to determine the issue. The supreme court recently explained the meaning of "scope of employment" in the context of governmental immunity in the case of *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450 (Ind.2000). The court explained that " 'conduct ... of the same general nature as that authorized, or incidental to the conduct authorized,' " is within the employee's scope of employment. *Id.* at 453 (*quoting* Restatement (Second) Agency § 229 (1958)). An act is incidental to authorized conduct when it " 'is subordinate to or pertinent to an act which the servant is employed to perform,' " *id.* (*quoting* Restatement (Second) Agency § 229 cmt. b (1958)), or when it is done " 'to an appreciable extent to further his employer's business.' " *Id.* (*quoting Kemezy v. Peters,* 622 N.E.2d 1296, 1298 (Ind.1993)). In this case, there is no question that Officer Stoops's use of his police canine Chester to find and apprehend a fleeing suspect was intended to further the police activities of his employer, the City. This was precisely the conduct that Officer Stoops was employed to perform, and was accordingly in the scope of his employment.

a negligent manner, the officer is no longer "enforcing a law." To exempt negligent acts from immunity under the Act, the explicit purpose of which is to shield government entities from liability for losses resulting from the performance of various governmental functions, would render the act largely meaningless. It is, after all, the *Tort* Claims Act. Indeed, police officers may be immune when their conduct is intentionally tortious, *see City of Anderson v. Weatherford,* 714 N.E.2d 181, 186 (Ind. Ct.App.1999), *trans. denied* (holding that police officers were immune from liability for damages resulting from alleged intentional infliction of emotional distress), and even when it is "egregious" and apparently contrary to law. *Minks,* 709 N.E.2d at 382–383 (holding that police officers who instructed an intoxicated and unlicensed teenager, who was a passenger in a vehicle operated by his intoxicated relative, to drive the vehicle home rather than go through the effort of preparing arrest paperwork for the two intoxicated subjects, were immune from liability for damages resulting from deaths of two innocent motorists, and injuries to another, cause by the drunk driving relative).

Here, the City deployed Chester to assist in locating and apprehending an individual who had escaped from a juvenile detention facility, where he was being held on charges of auto theft, and who was evading recapture by the police. The City's use of Chester under the circumstances plainly constituted an "activit[y] in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof," and therefore amounted to the "enforcement of a law" within the meaning of the ITCA.

■ Finally, we note that a portion of Davis's brief may be construed to suggest that, regardless of whether Officer Stoops was enforcing a law in the scope of his employment, the City is not entitled to immunity because Officer Stoops's use of Chester to apprehend the fleeing subject under the circumstances amounted to an unconstitutional use of excessive force. It is unclear if a police officer enforcing the law in the scope of his employment would be exempt from immunity under the ITCA if his actions amounted to excessive force, or were illegal in some other way.[4] How-

4. In *Kemezy,* the supreme court applied the test from *Quakenbush,* which had been issued the same day, and determined that the ITCA did not immunize a police officer's use of excessive force, reasoning that "law enforcement officers owe a private duty to refrain from using excessive force in the course of making arrests." *Id.* at 1297. However, as noted above, the supreme court in *Benton* explicitly disavowed the *Quakenbush* public duty/private duty test, upon which the holding of *Kemezy* is based. Thus, the excessive force exception to ITCA immunity announced in *Kemezy* cannot be regarded as good law to the extent that it is based on the *Quakenbush* test. The Act itself does not provide an explicit immunity exemption for excessive force or other illegal acts. The only exceptions specifically recognized are false arrest and false imprisonment. The interpretation of the ITCA to include a free standing illegality or excessive force exception, without any explicit support in the Act itself, would appear to run afoul of the supreme court's admonition in *Benton* that "it is the legislature, and not the courts, that is in the best position to deter-

mine the nature and extent to which governmental units in Indiana should be insulated from tort liability." *Id.* at 232. *But see O'Bannon v. City of Anderson,* 733 N.E.2d 1, 1–2 (Ind.Ct.App.2000) (concluding that actions of City of Anderson police officers in effecting the arrest of an armed felon who had attempted to kill a police officer did not amount to excessive force, and that the officers were entitled to law enforcement immunity under the ITCA). We also note that a police officer's use of excessive force or performance of his duties in an otherwise illegal manner would not appear to take those activities outside the scope of his employment, *see Weatherford,* 714 N.E.2d at 186 (noting that willful and wanton behavior, and even intentional criminal conduct, may fall within the scope of employment), or beyond the realm of law enforcement. *See Minks,* 709 N.E.2d at 382–383 (immunizing apparently unlawful actions by police officers who instructed an intoxicated and unlicensed teenager to drive a vehicle rather than go through the effort of preparing arrest paperwork).

ever, we need not determine this question here because, as the City notes, the legality of the City's use of force was an issue resolved against Davis in the prior federal court action, and Davis was collaterally estopped from raising it again in his state case.

■ The doctrine of collateral estoppel bars the re-litigation in a subsequent action of a fact or issue adjudicated in a prior lawsuit. *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 968 (Ind.1998). The former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Sullivan v. American Cas. Co.,* 605 N.E.2d 134, 137 (Ind.1992). When determining whether a party is collaterally estopped from litigating an issue, a court must consider whether the party against whom the judgment is asserted had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit estoppel. *Id.* at 138.

Davis pursued his excessive force claims in the United States District Court. The federal court entered summary judgment against Davis on these claims, a final judgment from which Davis apparently took no appeal. Davis conceded in the trial court that his excessive force claims were rejected by the federal court, and he presents no argument upon appeal that he did not have a full and fair opportunity to litigate his excessive force claim in the prior action, or that application of collateral estoppel would be otherwise unfair. Thus, the federal court's judgment dismissing Davis's excessive force claims must be given preclusive effect here, and to the extent Davis argues that the City is not entitled to law enforcement immunity because its use of Chester amounted to an illegal use of excessive force, that argument would fail.

In sum, because Davis's damages resulted from officer Stoops's deployment of Chester, which constituted the enforcement of law in the scope of his employment, the City is immune from liability pursuant to the ITCA.

Reversed.

FRIEDLANDER, J., and MATTINGLY, J., concur.