**Jeffrey PATRICK, City of Gary and City of Gary Police Department, Appellants–Defendants,**

v.

**Richard MIRESSO, Appellee–Plaintiff.**

No. 45A03–0405–CV–224.

Court of Appeals of Indiana.

Jan. 31, 2005.

Transfer Granted May 12, 2005.

---

Stephen Bower, Cohen & Thiros, P.C., Merrillville, IN, Attorney for Appellants.

Steven W. Etzler, Schreiner, Malloy & Etzler, P.C., Highland, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Jeffrey Patrick and the City of Gary ("the City") (collectively, "Appellants") appeal the denial of their motion for summary judgment with respect to Richard Miresso's negligence claim. We affirm and remand for further proceedings.

### Issue

We consolidate and restate the four issues Appellants present as whether the trial court erred in concluding that Appellants are not entitled to law enforcement immunity under Indiana Code Section 34–13–3–3(8) of the Indiana Tort Claims Act ("ITCA").[1]

### Facts and Procedural History

The facts most favorable to Miresso as the nonmoving party indicate that Patrick, a Gary police officer, was on duty in his marked police car on July 24, 2001. At

---

1. Ind.Code ch. 34–13–3.

approximately 5:30 a.m., Officer Patrick responded to a dispatch regarding an abandoned vehicle in the alley between Adams and Jefferson Streets. When Officer Patrick drove into the alley, he saw two men emerge from behind a garage carrying items in their arms. One of the men saw Officer Patrick's vehicle, dropped his items, and retreated toward the garage. The other man threw his items into a red Camaro parked in the alley and "drove away very quickly." Appellants' App. at 33 (Officer Patrick's affidavit). Believing that he had interrupted a burglary, Officer Patrick pursued the Camaro.

The Camaro drove north through the alley to 37th Avenue and turned east. As the Camaro reached Broadway, a couple blocks away, Officer Patrick estimated its speed at between sixty and seventy-five miles per hour. The Camaro drove through a red light at the intersection of 37th Avenue and Broadway. Officer Patrick slowed as he approached the intersection. Officer Patrick saw a southbound car on Broadway stopping and thought that a northbound van and car would also stop. He then entered the intersection against the red light and collided with the van, driven by Miresso. According to two witnesses, Officer Patrick's flashing lights and siren were not on when the accident occurred. Id. at 57 (deposition of William Hoffman), 60 (deposition of Tyrone Beird).[2]

On April 16, 2002, Miresso filed a four-count complaint under the ITCA against Officer Patrick, the City, the City of Gary Police Department ("the Police Department"), and the suspected burglar, identified as John Doe. Count I alleges that Officer Patrick, "while acting as an agent of the City of Gary, and/or individually was careless, negligent and/or wil[l]fully and wantonly reckless" in failing to, *inter alia,* "maintain a proper lookout for other vehicles" and "act as a reasonably prudent driver in order to prevent and avoid a collision[.]" *Id.* at 11–12. Count I further alleges that, "[a]s a direct and proximate result of [Officer Patrick's] negligent and/or intentional acts[,]" Miresso suffered personal injuries, property damage, and economic losses. *Id.* at 11–12. In Count I, Miresso seeks judgment against Officer Patrick, "jointly and severally with the City of Gary[.]" *Id.* at 13.[3] Counts II, III, and IV allege additional "negligent and/or intentional" conduct by the City, the Police Department, and the John Doe, respectively.

On July 1, 2003, Appellants filed a motion for summary judgment in which they asserted that Officer Patrick "was engaged in the enforcement of the law at the time of the accident . . . and as such there is statutory immunity under Indiana law." *Id.* at 22. Miresso filed a response, and Appellants filed a reply. On November 24, 2003, the trial court entered the following order:

> The Court, having previously heard arguments of counsel and having taken under advisement [Appellants'] Motion for Summary Judgment, now finds and orders as follows:
>
> . . . .
>
> 2. Richard Miresso filed his complaint against Officer Patrick, The City of Gary, and the City of Gary Police Department alleging negligence for the damages sustained in the accident.

---

2. In an affidavit, Officer Patrick stated that he "had already turned on [his] lights and siren" when he approached the intersection. Appellants' App. at 33.

3. We presume that Miresso seeks judgment against the City in Count I under a respondeat superior theory.

3. [Appellants] moved for summary judgment claiming that [Appellants] were immune from the action under the Indiana Tort Claims Act (hereinafter "ITCA").

. . . .

8. In *Benton v. City of Oakland City*, 721 N.E.2d 224 (Ind.1999), the court indicated that it is for the legislature to determine when to insulate government from tort liability.

9. The legislature has imposed a statutory duty to operate an emergency vehicle with due regard for the safety of all persons. I.C. § 9–21–1–8[.]

10. [*Quakenbush*] *v. Lackey*, 622 N.E.2d 1284 (Ind.1993) involved a negligence claim stemming from an accident involving an emergency vehicle. There the court focused on statutory duties, specifically referring to I.C. § 9–21–1–8 and I.C. § 9–13–2–6. The court determined that summary judgment was inappropriate because there was a question of fact, namely if the officer was negligent in the operation of his vehicle. *Id.* at 1290–1291.

11. The law enforcement immunity under [I.C. § 34–13–3–3(8) ] of the ITCA does not grant immunity to government agencies or employees from liability for the breach of the duty of reasonable care as enumerated in I.C. § 9–21–1–8. [*Quakenbush* ] at 1290, 1291.

12. Officer Patrick was clearly acting within his scope of employment as he was pursuing a suspect to a crime and therefore attempting to enforce the law as required by the ITCA.

13. However, there exist genuine issues as to a material fact in this case; namely, whether or not Officer Patrick breached the statutory duty of care for the safety of all persons set forth in I.C.

§ 9–21–1–8. Therefore, summary judgment is precluded herein.

It is therefore ORDERED that [Appellants'] Motion for Summary Judgment be and is hereby DENIED.

*Id.* at 8–10 (some citations omitted). Subsequent mediation was unsuccessful, and this belated interlocutory appeal ensued.[4]

**Discussion and Decision**

 When reviewing a denial of summary judgment, our well-settled standard of review is the same as it was for the trial court. *McClain v. Chem–Lube Corp.*, 759 N.E.2d 1096, 1100 (Ind.Ct.App.2001), *trans. denied* (2002).

> We must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. We must consider the pleadings and evidence designated pursuant to Ind. Trial Rule 56(C) without deciding their weight or credibility. Summary judgment should be granted only if such evidence shows there is no genuine issue of material fact and judgment is warranted as a matter of law.
>
> The party moving for summary judgment has the burden of making a *prima facie* showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Once the moving party meets these two requirements, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party.

*Id.* at 1100–01 (citations omitted). "Specific findings and conclusions are neither re-

---

4. The Police Department does not appeal the trial court's order.

quired nor prohibited in the summary judgment context. Although specific findings aid appellate review, they are not binding on this court." *Id.* at 1101 (citation and quotation marks omitted). The party appealing the denial of summary judgment bears the burden of persuading us that the trial court erred. *Ind. Patient's Comp. Fund v. Wolfe,* 735 N.E.2d 1187, 1190 (Ind.Ct.App.2000), *trans. denied.*

▮ Appellants contend that the trial court erred in determining that they are not entitled to immunity under the ITCA. Our supreme court has explained that

> [t]he ITCA ... governs lawsuits against political subdivisions and their employees. Among other things the statute provides substantial immunity for conduct within the scope of the employee's employment. *See* I.C. § 34–13–3–3 (setting forth twenty-two separate categories for which immunity attaches). Immunity assumes negligence but denies liability. The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.

*Bushong v. Williamson,* 790 N.E.2d 467, 472 (Ind.2003) (some citations and quotation marks omitted). "Whether a governmental entity is immune from liability under the ITCA is a question of law for the courts, although it may include an extended factual development." *City of Hammond v. Reffitt,* 789 N.E.2d 998, 1001 (Ind. Ct.App.2003), *trans. denied.* The party seeking immunity bears the burden of establishing that its conduct comes within the ITCA. *King v. Northeast Security, Inc.,* 790 N.E.2d 474, 480 (Ind.2003).

Appellants contend that they are immune from liability under Indiana Code Section 34–13–3–3(8), which provides that "[a] government entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment."[5] The trial court found, and neither party disputes on appeal, that Officer Patrick was acting within the scope of his employment in pursuing the fleeing burglary suspect.[6] The trial court also determined, and Appellants do not dispute, that Officer Patrick's pursuit was an attempt to enforce the law as contemplated by Indiana Code Section 34–13–3–3(8).[7] *See Quakenbush v.*

---

**5.** This subsection was previously codified as Indiana Code Section 34–13–3–3(7) and as Indiana Code Section 34–4–16.5–3(7). For simplicity's sake, we refer to the current version of this statute where appropriate.

**6.** As previously mentioned, Miresso sued Officer Patrick in both his official and personal capacities. *See* Appellants' App. at 11 (Count I of Miresso's complaint); *see also* Ind.Code § 34–13–3–5(c) ("A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally."). Miresso

correctly observes that Appellants did not address the issue of Officer Patrick's personal liability in their motion for summary judgment and that the trial court did not rule on that issue. Consequently, we do not address Appellants' argument regarding Officer Patrick's personal liability.

**7.** We are unpersuaded by Miresso's contention that law enforcement actions are not entitled to immunity under Indiana Code Section 34–13–3–3(8). *See* Appellee's Br. at 7 ("Officer Patrick's *decision* to pursue the burglary suspect is not what lead to the accident and injury of Miresso. It was Officer Patrick's *actions* of negligently driving his vehicle through a stoplight without his lights or siren

*Lackey,* 622 N.E.2d 1284, 1287 n. 3 (Ind. 1993) (noting that scope of "adoption or enforcement of a law" in Ind.Code § 34–13–3–3(8) "is not limited to traditional law enforcement activities such as the arrest or pursuit of suspects by police").

The crux of Appellants' argument is that the trial court erred in concluding, based on *Quakenbush,* that Indiana Code Section 34–13–3–3(8) "does not grant immunity to government agencies or employees from liability for the breach of the duty of reasonable care as enumerated in [Indiana Code Section] 9–21–1–8." Appellants' App. at 9. That statute provides as follows:

(a) This section applies to the person who drives an authorized emergency vehicle [8] when:

(1) responding to an emergency call;

(2) in the pursuit of an actual or suspected violator of the law; or

(3) responding to, but not upon returning from, a fire alarm.

(b) The person who drives an authorized emergency vehicle may do the following:

(1) Park or stand, notwithstanding other provisions of this article.

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as necessary for safe operation.

(3) Exceed the maximum speed limits if the person who drives the vehicle does not endanger life or property.

(4) Disregard regulations governing direction of movement or turning in specified directions.

(c) This section applies to an authorized emergency vehicle only when the vehicle is using audible or visual signals as required by law. An authorized emergency vehicle operated as a police vehicle is not required to be equipped with or display red and blue lights visible from in front of the vehicle.

(d) This section does not do the following:

(1) Relieve the person who drives an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons.

(2) Protect the person who drives an authorized emergency vehicle from the consequences of the person's reckless disregard for the safety of others.

Ind.Code § 9–21–1–8.

In *Quakenbush,* our supreme court was confronted with substantially similar facts. A police officer was driving to the scene of a domestic disturbance in a marked vehicle with its headlights on but no emergency lights, siren, or horn. The officer ran a red light and collided with the plaintiff's car. Both the trial court and the Court of Appeals determined that the officer and the city were entitled to law enforcement immunity under Indiana Code Section 34–13–3–3(8).

On transfer, our supreme court noted that when the ITCA was enacted in 1974,

Indiana courts had determined not only that the king could do wrong, but that he could be held accountable for those wrongs. Governmental immunity for the breach of a private duty had been virtually abolished by judicial decisions. *Campbell v. State* (1972), 259 Ind. 55,

---

activated that caused the accident. Patrick's *actions* once the *decision* to pursue the suspect was made, were no longer protected by the ITCA ....") (emphases added). The fallacy of Miresso's argument is evidenced by the plain language of the statute: "unless the *act of enforcement* constitutes false arrest or false imprisonment." Ind.Code § 34–13–3–3(8) (emphasis added).

**8.** A police department vehicle is an authorized emergency vehicle. Ind.Code § 9–13–2–6(1)(B).

284 N.E.2d 733 (state governmental functions).

Nonetheless, the erosion of governmental immunity at common law did not leave governmental entities and their employees subject to liability for every mistake. Rather, as the court in *Campbell* noted, governmental units were not liable for all acts or omissions which might cause damage to persons, but only those involving the breach of a private duty owed to an individual. To illustrate the retention of immunity in favor of governments and their employees for breach of a public duty, the *Campbell* court cited *Simpson's Food Fair v. City of Evansville* (1971), 149 Ind.App. 387, 391, 272 N.E.2d 871, 873. In *Simpson's,* the city and its police were held immune from a claim by a retail grocery corporation that city police negligently failed to halt a wave of criminal activities that had forced the store out of business, because the duty to provide police protection under those circumstances was a duty owed to the public at large, not to individual members of the public. On the other hand, governmental entities and employees were not immune for the breach of a duty owed to an individual. This public/private duty analysis has been applied to various fact situations subsequent to passage of the Act.

*Quakenbush,* 622 N.E.2d at 1287–88 (footnote and some citations omitted).

The *Quakenbush* court noted that the first case interpreting the ITCA's law enforcement immunity provision was *Seymour National Bank v. State,* 422 N.E.2d 1223 (Ind.1981), *modified on reh'g,* 428 N.E.2d 203, in which a state trooper collided with a vehicle while pursuing a car that had fled from a traffic stop. The *Seymour* majority held that the State was entitled to law enforcement immunity under Indiana Code Section 34–13–3–3(8), rejecting the plaintiffs' claim that the term "enforcement of a law" is ambiguous:

> We do not accept that contention, for in our view, an officer engaged in effecting an arrest is in fact enforcing a law. And, in cases where a statute is clear and unambiguous, we have no choice but to hold it to its plain meaning. Moreover, even if we were to accept Plaintiffs' contention, we perceive the Legislature's amendment of [Indiana Code Section 34–13–3–3(8) [9]] as having a clarifying effect on the statute insofar as all acts of enforcement save false arrest and imprisonment now render the State immune.

*Seymour,* 422 N.E.2d at 1226 (citation and footnote omitted).

In dissent, Justice DeBruler observed that the driver of an emergency vehicle "has a statutorily imposed duty towards private individuals to drive it during emergency runs with due regard to the safety of all persons." *Id.* at 1226 (DeBruler, J., dissenting) (citing predecessor to Ind.Code § 9–21–1–8). "The officer in pursuing the suspect and attempting to arrest him was also acting in furtherance of a duty owed solely to the public, i.e., the duty to enforce the criminal laws. To give full rein under these circumstances to the one is to vitiate the other. Yet to permit that result is our unavoidable judicial duty." *Id.* at 1226–27 (citing *Simpson's*). Justice DeBruler further observed that

> statutes in derogation of the common law will receive a strict construction and statutes will not be construed in a manner resulting in harsh or unjust consequences. [Also], where two statutes are in apparent conflict they should be con-

---

**9.** This 1976 amendment added the "scope of employment" and "false arrest or false im- prisonment" provisions. *Seymour,* 422 N.E.2d at 1223 n. 1.

strued if it can be reasonably done, in a manner so as to bring them into harmony. Here, the immunity statute is in derogation of the common law and at odds with the statutory command that emergency vehicles be operated with due care. At common law this state police officer would be required to respond in damages for injuries resulting from his negligent operation of the patrol car. To grant an immunity which would shield negligent and reckless conduct obviously leaves injured victims to suffer without any remedy. Were we to construe the vague immunity provision as being applicable only in circumstances in which the public employee's conduct involved a public duty only, impediment of the common law would be lessened, unjust consequences would be reduced in number, and the two statutes would be left viable and in harmony. This is the legal course charted by Judge Robertson [who authored the Court of Appeals' opinion in *Seymour*], and I am convinced it is the correct one.

*Id.* at 1227 (citation omitted).

Justice Hunter concurred in Justice DeBruler's dissent and predicted in his own dissent that behind the *Seymour* majority's opinion

> waits a Pandora's box of unsettling questions which will revolve around dubious distinctions between the "administration" and "enforcement" of laws. The source of that inevitable consternation is the fact that the term "enforcement" in [Indiana Code Section 34–13–3–3(8)] is ambiguous both in and of itself and in relation to the various statutes with which it must be construed and reconciled.

*Id.* at 1229 (Hunter, J., dissenting). After *Seymour*, Court of Appeals decisions "extend[ed] law enforcement immunity to encompass many acts within the scope of a law enforcement officer's employment." *Quakenbush*, 622 N.E.2d at 1289 (collecting cases).

In *Quakenbush*, the court hearkened back to Judge Robertson's analysis in *Seymour*:

> In writing the *Seymour* opinion for the Court of Appeals, Judge Robertson described the "public-private" duty test of *Campbell*, and concluded that the obligation of a police officer to use reasonable care in the operation of a squad car was a private duty. Pursuant to that conclusion, at common law, a[n] officer would not be immune for the breach of that duty. Judge Robertson also addressed whether [Indiana Code Section 34–13–3–3(8)] changed the common law. In doing so, he concluded that the term "enforcement of the law" rendered Section [3(8)] ambiguous and ultimately concluded "that the legislature intended enforcement to mean at least that the decision to enforce and the end result thereof upon the object of the enforcement (within the bounds of law) is protected activity and will not give rise to a civil action for damages." In other words, he reasoned that the decision of whether or not to investigate a crime, whether to arrest a particular individual for committing a crime, and the arrest itself were protected activities so long as the acts are otherwise conducted legally. He concluded that these activities were in the nature of the public duty owed by law enforcement officials to the community as a whole.
>
> We believe this analysis comports with the legislature's intent when it drafted Section [3(8)]. This analysis also gives meaning to the exception in Section [3(8)] that immunity does not apply if an officer's conduct results in false arrest or false imprisonment.

To conclude that Section [3(8)] confers immunity to all law enforcement activity conducted within the course and scope of employment, as did the *Seymour* majority, results in a statute in derogation of common law because prior to the Act, liability was imposed in connection with certain law enforcement activity. A statute in derogation of the common law is strictly construed against limitations on a claimant's common law right to bring suit. The Court presumes that the legislature does not intend to make any change in the common law beyond what a statute declares either in express terms or by unmistakable implication. Granting immunity to law enforcement officers who fail to exercise reasonable care while driving would sanction negligent and reckless conduct, and result in hardship to the individual injured by the enforcement.

Moreover, as Justice DeBruler noted in his dissent to *Seymour*, interpreting Section [3(8)] to confer immunity in situations involving the operation of police vehicles on public streets conflicts with other statutes which regulate the operation of such vehicles. Specifically, [Indiana Code Section] 9–21–1–8 provides that persons who drive an authorized emergency vehicle, such as a police car, are not relieved from the duty to drive "with due regard for the safety of all persons," even though such drivers may disobey certain rules of the road. Where two statutes are in apparent conflict they should be construed, if it can be reasonably done, in a manner so as to bring them into harmony.

Judge Robertson and Justices DeBruler and Hunter reasoned that Section [3(8)] did not confer immunity to "law enforcement" activity outside the public duty owed to the community as a whole. Instead, governmental entities and their employees would be subject to liability for the breach of private duties as at common law. For example, having decided to respond to the report of a law being broken, the responding officer owes a duty of driving with reasonable care to other travelers on the highway. We are persuaded that this reasoning was correct.

Accordingly, we hold that Section [3(8)] was intended to codify the common law as it existed at the time the Act was passed. The state of the common law was such that governments and their employees were subject to liability for the breach of private duties owed to individuals, but were immune from liability for the breach of public duties owed to the public at large.

. . . .

The gist of plaintiff's complaint is that [the police officer] drove her squad car in a negligent manner. As such, the complaint alleges the breach of a private duty owed by [the officer] to the plaintiffs. Accordingly, Section [3(8)] does not provide immunity.

Whether [the officer's] conduct fell below the level of care that an ordinarily-prudent person would exercise under the same or similar circumstances is a question of fact. Summary judgment is inappropriate in such a circumstance.

*Id.* at 1289–91 (footnote and citations omitted).

Appellants point out that our supreme court has distanced itself from *Quakenbush*'s "public/private duty" analysis in subsequent decisions, most notably in *Benton v. City of Oakland City*, 721 N.E.2d 224 (Ind.1999), and *King v. Northeast Security, Inc.*, 790 N.E.2d 474 (Ind.2003). In *Benton*, the plaintiff sued the city for injuries sustained in a public swimming area. Our supreme court acknowledged that the city's *statutory* immunity under the ITCA

was not at issue but nevertheless sought to clarify several principles of *common law* immunity that had become muddled since its decision in *Campbell*. The court explained that

"the duty owed to a private individual" to which *Campbell* refers is the common law duty to use ordinary and reasonable care under the circumstances. By abolishing the doctrine of sovereign immunity [in almost all respects], *Campbell* recognized that all governmental units were bound by this duty, directly and also derivatively, that is, under a theory of respondeat superior. For a breach of the duty of ordinary and reasonable care under the circumstances, Indiana common law would henceforth treat a governmental defendant no different from a non-governmental defendant.

*Benton*, 721 N.E.2d at 228 (citation and footnote omitted). After tracing the bifurcation of this rule into concepts of "private duty" and "public duty," the court reaffirmed its ruling in *Campbell*:

We hold that *Campbell* is properly applied by presuming that a governmental unit is bound by the same duty of care as a non-governmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions [to the elimination of sovereign immunity as recognized in *Campbell* ] (prevent crime, appoint competent officials, or make correct judicial decisions) that it should be treated as one as well.

*Id.* at 230.

The *Benton* court then took pains to emphasize "that the foregoing discussion addresses *only the common law*. It does not relax any of the extensive protections from tort liability afforded Indiana governmental units *by statute*." *Id.* at 231–32 (emphases added; footnote omitted). The court further explained,

In the years that followed, plaintiffs pursuing tort claims against the government have been required to navigate their way through the various immunity provisions of the ITCA and through subsequent decisions which construed the extent and scope of the various immunity provisions. *See, e.g., ... Seymour Nat'l Bank v. State*, 422 N.E.2d 1223, 1226 (Ind.1981), *overruled by Quakenbush v. Lackey*, 622 N.E.2d 1284, 1290 (Ind.1993).... *In general, it is only after a determination is made that a governmental defendant is not immune under the ITCA that a court undertakes the analysis of whether a common law duty exists under the circumstances. ...* In returning to the moorings of *Campbell*, we also return to the principle that it is the legislature, and not the courts, that is in the best position to determine the nature and extent to which governmental units in Indiana should be insulated from tort liability.

*Id.* at 232 (emphasis added; some citations and footnote omitted). In a footnote to this passage, the court stated,

*Quakenbush v. Lackey* employed the concept of a private duty to analyze the availability of one of the ITCA's immunity defenses. As a general matter, we find *Quakenbush*'s concept of private duty consonant with the "duty owed to a private individual" discussed, *supra* .... However, detailed discussion of this point (as well as the interaction of common law principles and statutory immunities) is beyond the scope of this opinion.

*Id.* at 232 n. 15.

In *King*, our supreme court sought to determine, *inter alia*, whether a school district was liable for injuries sustained by a student beaten by other students in the high school parking lot. The school district claimed law enforcement immunity under

the ITCA on the basis that it failed to prevent the assault or enforce rules or regulations regarding student misconduct or unlawful activity. The *King* court stated,

> In [*Quakenbush*], this Court discussed at some length the meaning of "enforcement" as used in [Indiana Code Section 34–13–3–3(8)]. We concluded first that section [3(8)] was intended to codify the common law of immunity in this area as that law existed at the time the ITCA was passed. Second, under that common law regime, governments and their employees were subject to liability for "the breach of private duties owed to individuals, but were immune from liability for the breach of public duties owed to the public at large." Subsequent Indiana decisions relied on this public/private duty test in applying section [3(8)], but others have concluded *Benton* eliminated the test.·... *Benton* addressed only the common law presence or absence of duty of a governmental unit. It did not deal with statutory immunity under the ITCA. Indeed, *Benton* expressly observed, "In general, it is only after a determination is made that a governmental defendant is not immune under the ITCA that a court undertakes the analysis of whether a common law duty exists under the circumstances." *Benton*, 721 N.E.2d at 232.

Although *Benton* did not expressly disavow *Quakenbush*'s public/private duty test under section [3(8)], we believe it implicitly achieved this result. *Quakenbush* held that section [3(8)] adopted the common law of immunity for law enforcement activities, and concluded that the public/private duty test was the common law approach to law enforcement immunity at the time the ITCA was enacted. We do not believe the public/private duty test was frozen by statutory adoption. It is a tool for applying the "adopting or enforcing of a law" language, but as *Benton* pointed out, this test is frequently not susceptible to ready application. For that reason, *Benton* overruled the public/private duty test at common law. *We think the courts remain free to interpret the statutory language without referring to the public/private duty analysis when appropriate.*

*King*, 790 N.E.2d at 481–82 (emphasis added; footnotes and some citations omitted).

In light of *Benton* and *King*, then, we must conclude that *Quakenbush*'s rationale for holding that Indiana Code Section 34–13–3–3(8) does not provide law enforcement immunity under these circumstances is no longer controlling. With respect to this case, we interpret *King* as standing for the proposition that rather than determine the nature of the duty that Appellants owed to Miresso, we first determine whether Appellants' activities fall within the law enforcement immunity provision of Indiana Code Section 34–13–3–3(8) and then determine whether and to what extent this provision conflicts with Indiana Code Section 9–21–1–8. It seems clear that pursuing a fleeing burglary suspect constitutes enforcement of a law as contemplated by Indiana Code Section 34–13–3–3(8). *See King*, 790 N.E.2d at 482 (stating that " 'enforcement' of a law is an activity assigned to specific units of government[,]" such as "the police"); *see also Quakenbush*, 622 N.E.2d at 1287 n. 3 (recognizing "pursuit of suspects by police" as being among "traditional law enforcement activities"). Somewhat less clear is whether and to what extent Indiana Code Section 34–13–3–3(8) conflicts with Indiana Code Section 9–21–1–8 and which expression of legislative intent controls in this situation.

As mentioned previously, the *Quakenbush* court determined that the statutes are in conflict. *Quakenbush*, 622 N.E.2d at 1290. That determination may be considered *obiter dictum* in view of the grounds on which that case was ultimately decided, but we see no reason to dispute it here. The *Quakenbush* court also recited the maxim that "[w]here two statutes are in apparent conflict they should be construed, if it can be reasonably done, in a manner so as to bring them into harmony." *Id.* We respectfully suggest that this is an impossible task: Indiana Code Section 9–21–1–8 imposes a duty upon the driver of an emergency vehicle to "drive with due regard for the safety of all persons[,]" whereas Indiana Code Section 34–13–3–3(8) grants immunity to a driver who breaches this duty while enforcing a law. *See Bushong*, 790 N.E.2d at 472 ("Immunity assumes negligence but denies liability.").

 Given this irreconcilability, and bearing in mind our supreme court's pronouncement that "it is the legislature, not the courts, that is in the best position to determine the nature and extent to which governmental units in Indiana should be insulated from tort liability," *Benton*, 721 N.E.2d at 232, we make the following observations:

> We have the advantage of a set of well-settled principles in construing statutes, albeit there is not total consistency in these rules. Basic to these rules is that in construing a statute we must give effect to the intention of the legislature which enacted the law. It is also a familiar rule of statutory construction that two statutes dealing with a common subject matter will be read in *pari materia* and so as to harmonize and give effect to each.

There is also a presumption that the legislature in enacting a particular piece of legislation has in mind existing statutes on the same subject. Where the statutes cannot be harmonized or reconciled, some cases emphasize that the more specific or detailed statute should prevail over the more general statute; others emphasize that the most recent expression of the legislature shall prevail over older ones. It is also recognized that general statutes or rules do not overrule or supersede specific provisions in statutes or rules unless it is clear there was an intent to do so. Also, the repeal of statutes by implication is not a favored result in this State and such a repeal will occur only if it is clear that the statutes are so inconsistent that it must be assumed the legislature did not intend that both remain in force.

*County Council of Bartholomew County v. Dep't of Pub. Welfare of Bartholomew County*, 400 N.E.2d 1187, 1190 (Ind.Ct. App.1980) (citations omitted). Finally, we note that "[b]ecause the ITCA is in derogation of the common law, it must be strictly construed against limitations on the claimant's right to bring suit." *Burns v. City of Terre Haute*, 744 N.E.2d 1038, 1040 (Ind.Ct.App.2001).

 For purposes of our analysis, we conclude that Indiana Code Section 34–13–3–3(8) irreconcilably conflicts with Indiana Code Section 9–21–1–8 in regard to the liability of drivers of authorized emergency vehicles who cause a loss resulting from the enforcement of a law while driving such vehicles within the scope of their employment.[10] We presume that when the legislature enacted Indiana Code Section 34–13–3–3(8) in 1974, it was aware of Indiana Code Section 9–21–1–8, which was enacted in 1939. *See* 1974 Ind. Acts 142 § 1; 1939 Ind. Acts 48 § 25. Although

10. Obviously, such liability extends to the governmental entity that employs the driver.

Indiana Code Section 9–21–1–8 came first, it is more specific than Indiana Code Section 34–13–3–3(8), and given the disfavor in which we hold repeal by implication and the strictness with which we must construe the ITCA, we conclude that the legislature did not intend to abolish the longstanding duty of emergency vehicle drivers to "drive with due regard for the safety of all persons" as required by Indiana Code Section 9–21–1–8(d)(1). Stated differently, we conclude that the legislature did not intend to "sanction negligent and reckless conduct, and [cause] hardship to the individual injured by the enforcement." *Quakenbush*, 622 N.E.2d at 1290.[11] To the extent that Indiana Code Section 34–13–3–3(8) conflicts with Indiana Code Section 9–21–1–8, we hold that Indiana Code Section 9–21–1–8 prevails. Consequently, Appellants are not entitled to law enforcement immunity under the ITCA under these circumstances. The trial court did not err in denying Appellants' motion for summary judgment.

As a final matter, we note that we are fortunate to have legislative guidance, albeit conflicting, in determining the existence of governmental immunity in this case. In a different case involving different facts, we might find ourselves with substantially less guidance. We are frankly troubled by the prospect that police officers, police training and legal departments, and city officials, as well as courts, have insufficient guidance in navigating the confusing landscape of governmental immunity in many difficult circumstances.

In sum, we affirm the trial court's denial of summary judgment and remand for further proceedings consistent with this opinion.

Affirmed and remanded.

RILEY, J., and VAIDIK, J., concur.

---

11. An additional consideration worth mentioning is the effect of Indiana Code Section 9–21–1–8(c), which provides that the statute "applies to an authorized emergency vehicle *only when the vehicle is using audible or visual signals as required by law.* An authorized emergency vehicle operated as a police vehicle is not required to be equipped with or display red and blue lights visible from in front of the vehicle." (Emphasis added.) In other words, only when an emergency vehicle "is using audible or visual signals as required by law" may the driver "[p]roceed past a red or stop signal or stop sign[.]" Ind.Code § 9–21–1–8(b)(2). As stated previously, the evidence is conflicting as to whether Officer Patrick's vehicle was using any "audible or visual signals" when he ran the red light and collided with Miresso.