EAST CHICAGO POLICE DEPARTMENT, and Isaac Washington, William Pabey, Gabriel Fears, and Cliff Rhodes, Representative of the East Chicago Police Department, Appellants–Defendants,

v.

Michelle BYNUM and Keith Bynum, Appellees–Plaintiffs.

No. 45A03–0406–CV–272.

Court of Appeals of Indiana.

April 22, 2005.

Michael W. Bosch, Eric Randall, Bosch & Banasiak, Hammond, IN, Attorneys for Appellants.

Jeffrey S. Wrage, Blachly Tabor, Bozik & Hartman, Valparaiso, IN, Attorney for Appellees.

**OPINION**

SHARPNACK, Judge.

East Chicago Police Department and East Chicago Police Officers Isaac Washington, William Pabey, Gabriel Fears, and Cliff Rhodes (collectively "East Chicago") appeal the trial court's denial of its: (1) motion for summary judgment; (2) motion for judgment on the evidence; and (3) motion to correct error. East Chicago raises one issue, which we expand and restate as:

I. Whether the trial court erred by denying East Chicago's motion for summary judgment regarding the applicability of the law enforcement immunity provision of the Indiana Tort Claims Act ("ITCA");

II. Whether the trial court erred by denying East Chicago's motion for judgment on the evidence regarding the applicability of the law enforcement immunity provision of the ITCA; and

III. Whether the trial court abused its discretion by denying East Chicago's motion to correct error regarding the applicability of the law

enforcement immunity provision of the ITCA.[1]

We affirm.

The relevant facts follow. On June 23, 1996, at around 9:45 p.m., police officers from the East Chicago Police Department in four to six police cars were on "aggressive patrol" near the intersection of Columbus Drive and Ivy Street in East Chicago, Indiana. Aggressive patrol involves saturating a high crime area with police patrols and trying to find warrant subjects, gang activity, and drug activity. Officer Washington was patrolling in a marked police car with Officer Patrick Gransberry as a passenger. Officer Washington saw a car containing suspected gang members and a possible warrant violator driving westbound on Columbus Drive. Officer Washington, along with the other police vehicles on patrol, drove westbound on Columbus Drive and began following the suspected gang members' car in an attempt to stop it. When the gang members' car turned left onto Ivy Street, Officer Washington and the other police cars followed and turned left onto Ivy Street.

At that same time, Michelle Bynum was driving eastbound on Columbus Drive approaching the intersection of Ivy Street. Bynum's sister, Carol Bryant, was driving in the vehicle directly behind Bynum. As Officer Washington and the other police cars turned left onto Ivy Street in front of Bynum, Bynum abruptly stopped her car, and she was struck from behind by Bryant's car. There was conflicting evidence regarding whether Officer Washington and the other officers had activated their lights or sirens prior to the collision. As a result of the collision, Bynum sustained injuries, including post-traumatic hydrocephalus,[2] papilledema,[3] and visual loss in both eyes.[4]

Bynum and her husband, Keith, (collectively "the Bynums") filed a complaint, which they later amended, against Bryant and East Chicago and alleged that the police officers operated their vehicles in a negligent manner and that the police department was negligent in employing the officers. East Chicago filed a motion for summary judgment and argued that it was entitled to judgment as a matter of law because it was immune from suit under the ITCA. Specifically, East Chicago argued that it was entitled to governmental immunity under the law enforcement immunity provision of the ITCA because the police officers were engaged in the enforcement of law at the time of Bynum's loss. In their response to East Chicago's motion for summary judgment, the Bynums argued that: (1) the law enforcement immunity provision was not applicable because the officers violated their statutory duty under various motor vehicle safety statutes

1. Although each issue can ultimately be resolved by determining whether East Chicago was entitled to governmental immunity under the law enforcement immunity provision of the Indiana Tort Claims Act, we will separately address the trial court's denial of East Chicago's three motions due to the varying standard of reviews.

2. Hydrocephalus is "an abnormal increase in the amount of cerebrospinal fluid within the cranial cavity that is accompanied by expansion of the cerebral ventricles, enlargement of the skull and especially the forehead, and atrophy of the brain." MERRIAM-WEBSTER MEDICAL DICTIONARY *available at* http://www.nlm.nih.gov/medline plus/mplusdicti onary.html.

3. Papilledema is "swelling of the optic disc due to increased intracranial pressure on the optic nerve." THE OXFORD ENGLISH DICTIONARY (2nd ed.1989), *available at* http://www.oed.com.

4. Bynum lost ninety-five percent of her vision in her left eye and seventy-five percent of her vision in her right eye.

to operate their vehicles with reasonable care; (2) the motor vehicle safety statutes were in conflict with the law enforcement immunity provision of the ITCA and there was a genuine issue of material fact as to whether the police officers violated their statutory duty; and (3) there was a genuine issue of material fact as to whether the officers activated their lights and sirens during the chase of the gang members' car.

The trial court denied East Chicago's motion for summary judgment and issued an order, which provided:

1. The Court finds that there is a very substantial factual dispute in this cause which is whether the police officers involved activated either their lights or their sirens before conducting their high-speed chase.

2. This disputed factual issue is important in that it creates the issue s[sic] to whether the police officers were themselves in violation of statutory law which violation caused the accident herein involved.

3. The Court finds that Summary Judgment would not be appropriate in this cause.

4. The Motion for Partial Summary Judgment filed by [East Chicago] is therefore [sic] DENIED.

Appellant's Appendix at 5–6.

A jury trial was held in February 2004.[5] East Chicago moved for judgment on the evidence and argued that it was entitled to governmental immunity under the ITCA because it was engaged in law enforcement at the time of the accident and argued that "it [was] irrelevant whether [the police officers] had their sirens on or their flashers on ... [t]he only question to decide is whether they were involved in the enforcement of law." Transcript at 357. The trial court denied East Chicago's motion for judgment on the evidence and stated:

The Court finds that, as a matter of law, that [East Chicago] is not entitled to immunity. The Court's finding is based on the decision that the claim by [East Chicago] that they were in the process of enforcing the law does not bear forth in regards to the evidence so far submitted to the Court shows that during their actions [East Chicago] was, in fact, violating the law. That's the basis of the Court's decision; and, again, the motion is denied.

*Id.* at 358–359. As part of the final jury instructions, the trial court instructed the jury as to the existence of various motor vehicle safety statutes, including Ind.Code § 9–21–1–8, and instructed the jury that if they found "that any party or nonparty violated any of these statutes on June 23, 1996, and the violation was without excuse or justification, such conduct would constitute fault to be assessed against the party or nonparty." *Id.* at 436.

The jury returned a verdict for Bynum, found East Chicago to be ten percent at fault, and determined that Bynum's damages totaled $1,500,000. Thereafter, the trial court entered judgment against East Chicago in the amount of $150,000. East Chicago then filed a motion to correct error and argued that the trial court erred by denying its motion for judgment on the evidence because it was immune from liability under the law enforcement immunity provision of the ITCA. The trial court held a hearing and denied East Chicago's motion to correct error.

I.

■ The first issue is whether the trial court erred by denying East Chicago's motion for summary judgment. Our stan-

---

**5.** By the time of trial, the Bynums had settled their claim against Bryant.

dard of review for a trial court's grant or denial of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.*

Where a trial court enters findings of fact and conclusions thereon when ruling on a motion for summary judgment, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

East Chicago argues that the trial court erred by denying its motion for summary judgment and by determining that it was not entitled to governmental immunity under the law enforcement immunity provision of the ITCA. Governmental immunity from suit is governed by the ITCA. *See* Ind.Code § 34–13–3–3. Governmental entities and their employees are subject to liability for torts committed by them unless they can prove that one of the immunity provisions of the ITCA applies. *City of Hammond v. Reffitt*, 789 N.E.2d

998, 1001 (Ind.Ct.App.2003), *trans. denied.* "Because the ITCA is in derogation of the common law, we construe it narrowly against the grant of immunity." *Mangold*, 756 N.E.2d at 975. "The party seeking immunity bears the burden of establishing its conduct comes within the Act." *King v. Northeast Security, Inc.*, 790 N.E.2d 474, 480 (Ind.2003), *reh'g denied.* While the issue of a governmental entity's immunity from liability under the ITCA may require extended factual development, the issue remains a question of law for the courts. *City of Anderson v. Davis*, 743 N.E.2d 359, 362 (Ind.Ct.App.2001), *trans. denied.* Therefore, we review claims of governmental immunity de novo. *Id.* We owe the trial court no deference, and we will substitute our judgment for that of the trial court if necessary. *Id.*

East Chicago argues that it is immune from liability for the police officers' alleged negligence pursuant to Ind.Code § 34–13–3–3(8),[6] commonly referred to as the law enforcement immunity provision of the ITCA, which provides:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>
> \* \* \* \* \*
>
> (8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

**6.** At the time of collision, the law enforcement immunity provision was codified as Ind.Code § 34–4–16.5–3(7), and it was recodified in 1998 as Ind.Code § 34–13–3–3(7). In 2001, the statute was amended, and the law enforcement immunity provision was redesignated as Ind.Code § 34–13–3–3(8). The substance of the law enforcement immunity provision did not change during the recodification and redesignation. Throughout our discussion, we will refer to the current version of the statute, i.e., Ind.Code § 34–13–3–3(8).

Specifically, East Chicago argues that it is immune from liability because at the time of Bynum's loss, it was engaged in the enforcement of a law by going after suspected gang members and a warrant violator.

The Bynums do not dispute that the police officers were acting within the scope of their employment or that the police officers' pursuit of the gang members and warrant violator was an attempt to enforce the law. Instead, the Bynums argue that East Chicago is not entitled to immunity because East Chicago's law enforcement conduct expressly violated specific Indiana motor vehicle safety statutes and that the legislature did not intend immunity to cover violations of such motor vehicle safety statutes. The Bynums argue that because the law enforcement immunity provision of Ind.Code § 34–13–3–3(8) is in conflict with the motor vehicle safety statutes and because the motor vehicle safety statutes are more specific, the motor vehicle safety statutes should prevail and that East Chicago is not entitled to immunity where the officers breached their duty of care under these safety statutes. In other words, the Bynums contend that Ind.Code § 34–13–3–3(8) does not grant immunity to East Chicago for the officers' breach of their statutory duty of reasonable care under various motor vehicle safety statutes, including Ind.Code § 9–21–1–8,[7] which provides:

(a) This section applies to the person who drives an authorized emergency vehicle[8] when:

　(1) responding to an emergency call;

　(2) in the pursuit of an actual or suspected violator of the law;

　　or

　(3) responding to, but not upon returning from, a fire alarm.

(b) The person who drives an authorized emergency vehicle may do the following:

　(1) Park or stand, notwithstanding other provisions of this article.

　(2) Proceed past a red or stop signal or stop sign, but only after slowing down as necessary for safe operation.

　(3) Exceed the maximum speed limits if the person who drives the vehicle does not endanger life or property.

　(4) Disregard regulations governing direction of movement or turning in specified directions.

(c) This section applies to an authorized emergency vehicle only when the vehicle is using audible or visual signals as required by law. An authorized emergency vehicle operated as a police vehicle is not required to be equipped with or display red and blue lights visible from in front of the vehicle.

---

**7.** The Bynums also contend that East Chicago violated the following motor vehicle safety statutes: Ind.Code §§ 9–19–14–3, 9–19–5–3, and 9–21–8–35. Ind.Code §§ 9–19–14–3 and 9–19–5–3 provide that when an authorized emergency vehicle that is equipped with a siren is in the immediate pursuit of an actual or suspected violation of the law, the driver of the vehicle "shall" sound the siren when reasonably necessary to warn other drivers of the vehicle's approach, while Ind.Code § 9–21–8–35 provides, in part, that drivers are required to yield the right-of-way to an approaching

authorized emergency vehicle when it "is giving audible signal by siren or displaying alternately flashing ... lights" and that a person who drives an authorized emergency vehicle is not relieved from the "duty to operate the vehicle with due regard for the safety of all persons using the highway."

**8.** A police department vehicle is an authorized emergency vehicle. Ind.Code § 9–13–2–6(1)(B).

(d) This section does not do the following:

(1) Relieve the person who drives an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons.

(2) Protect the person who drives an authorized emergency vehicle from the consequences of the person's reckless disregard for the safety of others.

(footnote added).

We recently addressed the applicability of immunity under Ind.Code § 34-13-3-3(8) when a police officer is alleged to have violated his statutory duty of reasonable care under Ind.Code § 9-21-1-8. *See Patrick v. Miresso*, 821 N.E.2d 856 (Ind. Ct.App.2005), *trans. pending*. In *Patrick*, a police officer, who was driving a marked police car, was pursuing a fleeing burglary suspect when he drove through an intersection against the red light and was involved in a collision with the plaintiff. *Id.* at 858. Two witnesses indicated that the police officer's lights and siren were not on when the collision occurred, while the police officer stated that he had already turned on his lights before he entered the intersection. *Id.* at 858, 858 n. 2.

The plaintiff filed a complaint against the police officer, the police department, and the suspected burglar and alleged, among other things, that the police officer negligently operated his vehicle. *Id.* at 858. The police officer and the police department filed a motion for summary judgment in which they asserted that they were immune from liability under the law enforcement immunity provision of the ITCA because the police officer was engaged in the enforcement of the law at the time of the accident. *Id.* The trial court denied the police officer and the police department's motion for summary judgment and concluded, based on our supreme court's opinion in *Quakenbush v. Lackey*, 622 N.E.2d 1284, 1290-1291 (Ind.1993), *reh'g denied*, that Ind.Code § 34-13-3-3(8) did not grant immunity from liability to the police officer or the police department for the breach of the duty of reasonable care as set forth in Ind.Code § 9-21-1-8. *Id.* at 859.

The police officer and the police department appealed and argued that the trial court erred by relying on *Quakenbush* to conclude that Ind.Code § 34-13-3-3(8) did not grant immunity from liability for the breach of the duty of reasonable care under Ind.Code § 9-21-1-8. *Id.* at 861. We thoroughly discussed our supreme court's opinion and analysis in *Quakenbush*, including the caselaw leading up to *Quakenbush*, and its holding that Ind.Code § 34-13-3-3(8) was intended to codify the common law as it existed at the time the ITCA was passed; that under the common law, governmental entities and their employees were subject to liability for the breach of private duties; and that Ind.Code § 34-13-3-3(8) did not provide the police with immunity because the plaintiff's complaint alleged a breach of a private duty. *Id.* at 861-864.

We then noted that our supreme court's opinions in *Benton v. City of Oakland City*, 721 N.E.2d 224 (Ind.1999), and *King v. Northeast Security, Inc.*, 790 N.E.2d 474 (Ind.2003), had moved away from *Quakenbush's* public/private duty analysis of Ind. Code § 34-13-3-3(8). After discussing *Benton* and *King*, we stated:

In light of *Benton* and *King*, then, we must conclude that *Quakenbush's* rationale for holding that Indiana Code Section 34-13-3-3(8) does not provide law enforcement immunity under these circumstances [public duty v. private duty] is no longer controlling. With respect to this case, we interpret *King* as standing for the proposition that rather than de-

termine the nature of the duty that Appellants owed to [the plaintiff], we first determine whether Appellants' activities fall within the law enforcement immunity provision of Indiana Code Section 34–13–3–3(8) and then determine whether and to what extent this provision conflicts with Indiana Code Section 9–21–1–8. It seems clear that pursuing a fleeing burglary suspect constitutes enforcement of a law as contemplated by Indiana Code Section 34–13–3–3(8). *See King,* 790 N.E.2d at 482 (stating that " 'enforcement' of a law is an activity assigned to specific units of government[,]" such as "the police"); *see also Quakenbush,* 622 N.E.2d at 1287 n. 3 (recognizing "pursuit of suspects by police" as being among "traditional law enforcement activities"). Somewhat less clear is whether and to what extent Indiana Code Section 34–13–3–3(8) conflicts with Indiana Code Section 9–21–1–8 and which expression of legislative intent controls in this situation.

*Patrick,* 821 N.E.2d at 866.

We acknowledged that harmonizing Ind. Code § 9–21–1–8 and Ind.Code § 34–13–3–3(8) was "an impossible task" because "Indiana Code Section 9–21–1–8 imposes a duty upon the driver of an emergency vehicle to 'drive with due regard for the safety of all persons[,]' whereas Indiana Code Section 34–13–3–3(8) grants immunity to a driver who breaches this duty while enforcing a law." *Id.* at 867. We then stated:

> Given this irreconcilability, and bearing in mind our supreme court's pronouncement that "it is the legislature, not the courts, that is in the best position to determine the nature and extent to which governmental units in Indiana should be insulated from tort liability," *Benton,* 721 N.E.2d at 232, we make the following observations:

> We have the advantage of a set of well-settled principles in construing statutes, albeit there is not total consistency in these rules. Basic to these rules is that in construing a statute we must give effect to the intention of the legislature which enacted the law. It is also a familiar rule of statutory construction that two statutes dealing with a common subject matter will be read in *pari materia* and so as to harmonize and give effect to each.

> There is also a presumption that the legislature in enacting a particular piece of legislation has in mind existing statutes on the same subject. Where the statutes cannot be harmonized or reconciled, some cases emphasize that the more specific or detailed statute should prevail over the more general statute; others emphasize that the most recent expression of the legislature shall prevail over older ones. It is also recognized that general statutes or rules do not overrule or supersede specific provisions in statutes or rules unless it is clear there was an intent to do so. Also, the repeal of statutes by implication is not a favored result in this State and such a repeal will occur only if it is clear that the statutes are so inconsistent that it must be assumed the legislature did not intend that both remain in force.

*County Council of Bartholomew County v. Dep't of Pub. Welfare of Bartholomew County,* 400 N.E.2d 1187, 1190 (Ind.Ct. App.1980) (citations omitted). Finally, we note that "[b]ecause the ITCA is in derogation of the common law, it must be strictly construed against limitations on the claimant's right to bring suit." *Burns v. City of Terre Haute,* 744 N.E.2d 1038, 1040 (Ind.Ct.App.2001)[, *trans. denied* ].

For purposes of our analysis, we conclude that Indiana Code Section 34–13–3–3(8) irreconcilably conflicts with Indiana Code Section 9–21–1–8 in regard to the liability of drivers of authorized emergency vehicles who cause a loss resulting from the enforcement of a law while driving such vehicles within the scope of their employment.[ ] We presume that when the legislature enacted Indiana Code Section 34–13–3–3(8) in 1974, it was aware of Indiana Code Section 9–21–1–8, which was enacted in 1939. *See* 1974 Ind. Acts 142 § 1; 1939 Ind. Acts 48 § 25. Although Indiana Code Section 9–21–1–8 came first, it is more specific than Indiana Code Section 34–13–3–3(8), and given the disfavor in which we hold repeal by implication and the strictness with which we must construe the ITCA, we conclude that the legislature did not intend to abolish the longstanding duty of emergency vehicle drivers to "drive with due regard for the safety of all persons" as required by Indiana Code Section 9–21–1–8(d)(1). Stated differently, we conclude that the legislature did not intend to "sanction negligent and reckless conduct, and [cause] hardship to the individual injured by the enforcement." *Quakenbush,* 622 N.E.2d at 1290.[ ] To the extent that Indiana Code Section 34–13–3–3(8) conflicts with Indiana Code Section 9–21–1–8, we hold that Indiana Code Section 9–21–1–8 prevails. Consequently, Appellants are not entitled to law enforcement immunity under the ITCA under these circumstances. The trial court did not err in denying Appellants' motion for summary judgment.

*Id.* at 867–868 (footnotes omitted).

Given our analysis and holding in *Patrick,* we conclude that East Chicago is not entitled to law enforcement immunity under the ITCA under the circumstances of this case where it was alleged that the East Chicago police officers violated their statutory duty to drive with due regard for the safety of all persons while the police officers were acting within the scope of their employment. While the East Chicago police officers' act of pursuing gang members and a warrant violator would constitute enforcement of a law as contemplated by Ind.Code § 34–13–3–3(8), the legislature did not intend to abolish the duty of authorized emergency vehicle drivers to drive with due regard for the safety of all persons. Just as in *Patrick,* here, there is a question of whether the East Chicago police officers violated motor vehicle safety statutes, including Ind.Code § 9–21–1–8. The designated evidence reveals a divergence in evidence regarding whether Officer Washington had activated his lights or sirens prior to turning left in front of Bynum's car. In her affidavit, Bynum indicated that the police officers had not activated their emergency lights or sirens. In his deposition, Officer Washington testified that he had activated his lights and siren once he started to chase the gang members' car. The incident investigation reports from some of the police officers involved in the chase indicate that Officer Washington activated his emergency lights but make no mention that he activated his siren. In her deposition, Terri Weems, who was an independent witness, testified that she did not hear any sirens and that she did not notice any emergency lights until after the collision. Accordingly, we cannot say that the trial court erred by denying East Chicago's motion for summary judgment. *See, e.g., Patrick,* 821 N.E.2d at 866–868.

## II.

 The next issue is whether the trial court erred by denying East Chicago's motion for judgment on the evidence. The standard of review for a challenge to a

ruling on a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision. *Kirchoff v. Selby*, 703 N.E.2d 644, 648 (Ind.1998). A motion for judgment on the evidence is governed by Ind. Trial Rule 50(A), which provides:

Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

The court looks only to the evidence and the reasonable inferences drawn most favorable to the nonmoving party and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Kirchoff*, 703 N.E.2d at 648.

East Chicago moved for judgment on the evidence and argued that it was entitled to governmental immunity under the ITCA because it was engaged in law enforcement at the time of the accident and that "it [was] irrelevant whether [the police officers] had their sirens on or their flashers on . . . [t]he only question to decide is whether they were involved in the enforcement of law." Transcript at 357. The trial court denied East Chicago's motion for judgment on the evidence and stated:

The Court finds that, as a matter of law, that [East Chicago] is not entitled to immunity. The Court's finding is based on the decision that the claim by [East Chicago] that they were in the process of enforcing the law does not bear forth in regards to the evidence so far submitted to the Court shows that during their actions [East Chicago] was, in fact, vio-

lating the law. That's the basis of the Court's decision; and, again, the motion is denied.

*Id.* at 358–359.

On appeal, East Chicago argues that the trial court erred by denying its motion for judgment on the evidence because it was entitled to immunity under Ind.Code § 34–13–3–3(8). We have already held that Ind. Code § 9–21–1–8, the statute imposing a duty upon drivers of authorized emergency vehicles to drive with due regard for the safety of all persons, prevails over Ind. Code § 34–13–3–3(8), the law enforcement immunity provision of the ITCA, and that East Chicago was not entitled to law enforcement immunity under the ITCA under the circumstances in this case. *See supra* Part I. Furthermore, Ind.Code § 9–21–1–8 provides that the statute, which allows drivers of authorized emergency vehicles to disregard certain laws of the road, *see* I.C. § 9–21–1–8(b), applies "only when the vehicle is using audible or visual signals as required by law." I.C. § 9–21–1–8(c). Ind.Code §§ 9–19–14–3 and 9–19–5–3 provide that when an authorized emergency vehicle that is equipped with a siren is in the immediate pursuit of an actual or suspected violation of the law, the driver of the vehicle "shall" sound the siren when reasonably necessary to warn other drivers of the vehicle's approach. The Bynums presented evidence during the jury trial that the police officers did not use their sirens, lights, or turn signals when they turned in front of Bynum's car. Consequently, the trial court did not err by denying East Chicago's motion for judgment on the evidence on this basis. *See, e.g., Hartford Steam Boiler Inspection and Ins. Co. v. White*, 775 N.E.2d 1128, 1137 (Ind.Ct.App.2002) (holding that the trial court properly denied the defendant's motion for judgment on the evidence

where the defendant was not entitled to immunity), *reh'g denied, trans. denied.*

### III.

 The final issue is whether the trial court abused its discretion by denying East Chicago's motion to correct error. We review the trial court's decision to grant or deny a motion to correct error for abuse of discretion. *Paragon Family Restaurant v. Bartolini,* 799 N.E.2d 1048, 1055 (Ind.2003). An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Wright v. Wright,* 782 N.E.2d 363, 366 (Ind.Ct.App.2002).

After the jury returned a verdict for Bynum, found East Chicago to be ten percent at fault, and determined that Bynum's damages totaled $1,500,000, the trial court entered judgment against East Chicago in the amount of $150,000. East Chicago then filed a motion to correct error and argued that the trial court had erred by denying East Chicago's motion for judgment on the evidence. The trial court held a hearing and denied East Chicago's motion to correct error.

On appeal, East Chicago argues that the trial court abused its discretion by denying its motion to correct error because it was entitled to immunity under Ind.Code § 34-13-3-3(8). We have already held that East Chicago was not entitled to law enforcement immunity under the ITCA under the circumstances in this case. *See supra* Part I. Therefore, the trial court did not abuse its discretion by denying East Chicago's motion to correct error. *See, e.g., Dughaish ex rel. Dughaish v. Cobb,* 729 N.E.2d 159, 168–170 (Ind.Ct.App.2000) (holding that the trial court properly denied the party's motion to correct error), *reh'g denied, trans. denied.*

For the foregoing reasons, we affirm the trial court's denial of East Chicago's motion for summary judgment, motion for judgment on the evidence, and motion to correct error.

Affirmed.

BAKER and FRIEDLANDER, JJ., concur.